**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA
FORT LAUDERDALE DIVISION**

CASE NO. 12-60862-CIV-MIDDLEBROOKS/BRANNON

SHIRE DEVELOPMENT LLC,
SHIRE PHARMACEUTICAL
DEVELOPMENT INC.,
COSMO TECHNOLOGIES LIMITED and
GIULIANI INTERNATIONAL LIMITED,

Plaintiffs,

v.

WATSON PHARMACEUTICALS, INC.,
WATSON LABORATORIES, INC. –
FLORIDA, WATSON PHARMA, INC., and
WATSON LABORATORIES, INC.

Defendants.
_____/

**DEFENDANTS' OPENING CLAIM CONSTRUCTION BRIEF**

CASE NO.:  12-60862-CIV-MIDDLEBROOKS/BRANNON

# <u>TABLE OF CONTENTS</u>

Cases

| | | |
|---|---|---|
| I. | Introduction .................................................................................................... | 1 |
| II. | Nature and Stage of the Proceedings ............................................................. | 3 |
| III. | Summary of the Argument ............................................................................... | 3 |
| IV. | The '720 Patent ............................................................................................... | 4 |
| | A. | Background of the Technology ................................................................... | 4 |
| | B. | The Specification ....................................................................................... | 5 |
| | C. | The Asserted Claims .................................................................................. | 8 |
| | D. | Prosecution History ................................................................................... | 9 |
| | | 1. | Original Claims 1-11 and the December 13, 2001 Preliminary Amendment ................................................................................. | 9 |
| | | 2. | January 30, 2003 Office Action Rejecting Original Claims 1-11 ............. | 10 |
| | | a. | Rejection Based on Franco ..................................................... | 10 |
| | | b. | Other Rejections ................................................................... | 11 |
| | | 3. | Applicants' April 29, 2003 Response ....................................... | 11 |
| | | a. | Arguments to Overcome the Rejection Based on Franco ....................... | 11 |
| | | b. | Arguments Made to Overcome the Other Rejections ............................... | 12 |
| | | 4. | June 9, 2003 Final Office Action Rejecting All Pending Claims Based on Franco ................................................................................. | 13 |
| | | 5. | Applicants' October 9, 2003 Amendment and Arguments to Overcome the Rejection Based on Franco ..................................................... | 14 |
| | | 6. | April 5, 2004 Interview and April 5, 2004 Notice of Allowance ............. | 15 |
| V. | Argument ......................................................................................................... | 16 |
| | A. | The General Law Governing Claim Construction ................................................ | 16 |
| | B. | The Person of Ordinary Skill in the Art .......................................................... | 17 |
| | C. | Analysis ..................................................................................................... | 17 |

CASE NO.:  12-60862-CIV-MIDDLEBROOKS/BRANNON

1.      "dispersed" ............................................................................................... 17

2.      "wherein the active ingredient is dispersed both in [said] lipophilic matrix
        and in the hydrophilic matrix" ................................................................ 21

3.      "matrix" .................................................................................................... 24

4.      "inner lipophilic matrix" ......................................................................... 25

5.      "outer hydrophilic matrix" ...................................................................... 27

6.      "consisting of substances selected from the group consisting of
        unsaturated and/or hydrogenated fatty acid, salts, esters or amides thereof,
        fatty acid mono-, di- or triglycerids, waxes, ceramides, and cholesterol
        derivatives with melting points below 90° C" ......................................... 28

7.      "selected from the group consisting of" ................................................... 31

8.      "melting points" ...................................................................................... 32

VI.    Conclusion ...................................................................................................... 32

CASE NO.:  12-60862-CIV-MIDDLEBROOKS/BRANNON

# <u>TABLE OF AUTHORITIES</u>

### <u>Cases</u>

*Abbott Labs. v. Andrx Pharms., Inc.*, 473 F.3d 1196, 1210 (Fed. Cir. 2007) ............................... 31

*Abbott Labs. v. Baxter Pharm. Prods., Inc.*, 334 F.3d 1274, 1280 (Fed. Cir. 2003) ................... 29

*Bd. of Regents of the Univ. of Texas Sys. v. BENQ Am. Corp.*, 533 F.3d 1362, 1370 (Fed. Cir. 2008) ............................................................................................................................................. 19

*Beachcombers v. WildeWood Creative Prods., Inc.*, 31 F.3d 1154, 1162 (Fed. Cir. 1994) ......... 22

*Graham v. John Deere Co. of Kansas City*, 383 U.S. 1, 34, 86 S. Ct. 684, 702, 15 L. Ed. 2d 545 (1966) ............................................................................................................................................. 23

*Norian Corp. v. Stryker Corp.*, 432 F.3d 1356, 1358 (Fed. Cir. 2005) ........................................ 30

*Omega Engineering, Inc. v. Raytek Corp.*,
    334 F.3d 1314 (Fed. Cir. 2003) ....................................................................................... 17, 31

*Phillips v. AWH Corp.*,
    415 F.3d 1303 (Fed. Cir. 2005) ................................................................................. 16, 17, 32

*Spectrum International v. Sterilite Corp.*,
    164 F.3d 1372 (Fed. Cir. 1998) ............................................................................................. 31

I.    **Introduction**

Defendants Watson Pharmaceuticals, Inc., Watson Laboratories, Inc. – Florida, Watson Pharma, Inc., and Watson Laboratories, Inc. (collectively, "Watson") submit this opening brief on claim construction for United States Patent No. 6,773,720 ("the '720 patent"). The following claim terms are disputed by the parties:

| Term To Be Construed | Shire's Proposed Construction | Watson's Proposed Construction |
|---|---|---|
| "matrix" (claims 1-2) | "a macroscopically homogeneous structure in all its volume" | "a pharmaceutical matrix, consisting of active ingredient dispersed homogeneously throughout, that controls or delays release of the active ingredient" |
| "inner lipophilic matrix" (claim 1) | "a matrix including at least one lipophilic excipient, where the matrix is located within one or more other substances" | "a lipophilic matrix that contains active ingredient dispersed homogeneously within that is separate and distinct from, and contained within, an outer hydrophilic matrix" |
| "outer hydrophilic matrix" (claim 1) | "a matrix of at least one hydrophilic excipient, where the matrix is located outside the inner lipophilic matrix" | "a hydrophilic matrix that is separate and distinct from, and external to, an inner lipophilic matrix and that contains active ingredient dispersed homogeneously throughout" |
| "dispersed" (claim 1) | "sufficiently mixed to incorporate one substance with another" | "homogeneously mixed or combined" |
| "wherein the active ingredient is dispersed both in [said] lipophilic matrix and in the hydrophilic matrix" (claim 1) | "wherein mesalamine is incorporated with the lipophilic matrix and the hydrophilic matrix" | "active ingredient is in direct contact with and dispersed homogeneously within both the lipophilic matrix and within the hydrophilic matrix" |
| "consisting of substances selected from the group consisting of unsaturated and/or | "containing one or more of the following substances: unsaturated fatty acid, salt of an unsaturated fatty acid, ester of an unsaturated fatty acid, amide of an unsaturated fatty acid, hydrogenated fatty acid, salt of a hydrogenated fatty acid, ester of a | "containing at least two substances from the list below (excluding any other substance and also excluding any substance in the list below when used as a conventional lubricant) and each substance having a melting point lower than 90° C : unsaturated |

| Term To Be Construed | Shire's Proposed Construction | Watson's Proposed Construction |
|---|---|---|
| hydrogenated fatty acid, salts, esters or amides thereof, fatty acid mono-, di- or triglycerids, waxes, ceramides, and cholesterol derivatives with melting points below 90° C" (claim 1) | hydrogenated fatty acid, amide of a hydrogenated fatty acid, fatty acid monoglycerid, fatty acid diglycerid, fatty acid triglycerid, wax, ceramide, cholesterol derivative with melting points below 90° C" | fatty acid, salt of an unsaturated fatty acid , ester of an unsaturated fatty acid , amide of an unsaturated fatty acid, hydrogenated fatty acid, salt of a hydrogenated fatty acid, ester of a hydrogenated fatty acid, amide of a hydrogenated fatty acid, fatty acid monoglycerid, fatty acid diglycerid, fatty acid triglycerid, wax, ceramide, cholesterol derivative" |
| "selected from the group consisting of" (claim 1) | "an exclusionary term specifying that an element contains only what is expressly set forth in a recited list, but does not exclude substances unrelated to, or outside of the context of said element" | "an exclusionary term specifying that the element contains only what is expressly set forth in a recited list" |
| "melting points" (claim 1) | "the range of temperatures at which a solid begins to liquefy" | "the range of temperatures at which a solid begins to change from solid to liquid" |

*See* Joint Claim Construction Statement (D.E. 68) at 5-21.

Shire's proposed constructions are a transparent attempt to have the claims of the '720 patent cover mesalamine dosage forms, such as Watson's, that are not described in the '720 patent and that cannot reasonably have been contemplated as covered by its claims. Shire's constructions are patently inconsistent with and fail to account for the entirety of the intrinsic evidence. That evidence, including the plain language of the '720 patent's claims, its specification, and its prosecution history before the U.S. Patent Office ("PTO"), including statements made by the '720 patent Applicants distinguishing the prior art, clearly defines the claimed dosage forms as a multi-matrix or "dual matrix" system. That system contains both a distinct "inner lipophilic matrix" and a distinct "outer hydrophilic matrix" in which the inner lipophilic matrix is dispersed. Shire's proposed constructions ignore at least two critical pieces of the intrinsic evidence:   (1) that mesalamine must be homogeneously dispersed within the lipophilic matrix, which itself must be homogenously dispersed in the outer hydrophilic matrix, and (2) that mesalamine must separately be homogenously dispersed in the outer hydrophilic

2

CASE NO.: 12-60862-CIV-MIDDLEBROOKS/BRANNON

matrix. During prosecution, Shire amended its claims to emphasize both of these distinctions. Shire now seeks a claim construction that ignores the import of these actions and that would improperly allow Shire to recapture claim scope that was not limited to these features. Because Shire's proposed constructions are in conflict with the claims themselves, the specification, the prosecution history, and established case law, they should be rejected.

**II.     Nature and Stage of the Proceedings**

This case is a patent-infringement suit brought against Watson by Plaintiffs Shire Development LLC ("Shire Development"), Shire Pharmaceutical Development Inc., Cosmo Technologies Limited ("Cosmo"), and Giuliani International Limited (collectively, "Plaintiffs"), under the Hatch-Waxman Act (21 U.S.C. § 355) and 35 U.S.C. § 271(e). *See* Amended Complaint (D.E. 43) at 1 ("Complaint").

Shire Development is the holder of approved New Drug Application ("NDA") No. 22-000 for LIALDA® mesalamine delayed release tablets. *See* Complaint at ¶ 24. The '720 patent is assigned to Cosmo. *See id.* at ¶ 33.

On March 26, 2012, Watson notified Plaintiffs that it had submitted to the U.S. Food and Drug Administration ("FDA") an Abbreviated New Drug Application ("ANDA"), assigned number 203817, seeking approval under the Federal Food, Drug, and Cosmetic Act ("FDCA") to engage in the commercial manufacture, use or sale of its 1.2g mesalamine delayed-release tablets ("ANDA Products"), a generic version of LIALDA®, before the expiration of the '720 patent. *See* Answer, Affirmative and Other Defenses of Defendants to Amended Complaint and Counterclaims of Defendant/Counterclaimant Watson Laboratories, Inc. – Florida (D.E. 52) at ¶¶ 9, 23.

On May 8, 2012, Plaintiffs sued Watson, alleging that Watson's submission to FDA of ANDA No. 203817 infringed the '720 patent. (*See* Complaint  (D.E. 1) at ¶ 31. The '720 patent includes four claims, claims 1-4, all of which are asserted by Plaintiffs.

Fact and expert discovery is scheduled for completion on or before December 7, 2012. *See* Pretrial Scheduling Order (D.E. 33) at ¶ 10. A bench trial is scheduled to begin during the two-week period commencing February 11, 2013. *Id.* ¶ 1.

**III.    Summary of the Argument**

In order to obtain the '720 patent, Applicants had to amend the claims to reflect that (1) a mesalamine-containing core coated with a lipophilic substance did not constitute a "lipophilic

matrix" because it did not have mesalamine homogeneously dispersed therein and to require (2) the inclusion of mesalamine homogeneously dispersed in an outer hydrophilic matrix, separate from its presence as a homogenous dispersion within a inner lipophilic matrix. Applicants also had to argue that lipophilic substances, such as magnesium stearate and stearic acid, when used as conventional lubricants, could not form the claimed inner lipophilic matrix. Shire's proposed constructions attempt to ignore this history and improperly recapture claim scope that was surrendered by these amendments and arguments.

## IV.    The ʻ720 Patent

### A.    Background of the Technology

The ʻ720 patent relates to pharmaceutical compositions containing 5-amino-salicylic acid, commonly referred to as "mesalamine."  Mesalamine is "used in the treatment of Chron's [sic.] disease and ulcerative colitis thanks to its anti-inflammatory activity on the intestinal mucuses."  ʻ720 patent at col. 1, ll. 9-11. Because mesalamine is locally active, it is important to get enough of it into contact with the "intestinal mucuses."  To that end, controlled release mechanisms had been developed. *Id.* at col. 1, ll. 11-13.

For example, United Kingdom Patent Application No. GB 2 245 492 to Franco Pozzi and Pia Furiani ("Franco") describes a controlled release mechanism comprising a core containing active ingredient coated with a lipophilic material and a hydrophilic material:

> Therefore, [sic] object of the present invention is a programmed release oral solid pharmaceutical dosage form comprising an orally administrable core, containing the active ingredient, coated by a layer comprising a mixture of a hydrophobic material having a melting point between 50°C and 90°C and a surfactant having a HLB value between 10 and 16, the amount of the surfactant being from 5 to 20% by weight with respect to the hydrophobic material, and optionally a 30 water-soluble film forming material in an amount of from 5 to 30% by weight with respect to the hydrophobic material.

Franco at 6-7 (WL00059396-397). The ʻ720 patent describes such mechanisms as "reservoir" structures because they are "not macroscopically homogenous along all the symmetry axis of the final form." ʻ720 patent at col. 1, ll. 62-65.

The ʻ720 patent then discloses a multi-matrix dosage form that allegedly provides greater control over the release of mesalamine compared to these reservoir structures.

CASE NO.:  12-60862-CIV-MIDDLEBROOKS/BRANNON

### B.     The Specification

The '720 patent, titled "Mesalazine Controlled Release Oral Pharmaceutical Compositions," issued on August 10, 2004 to Roberto Villa, Massimo Pedrani, Mauro Ajani, and Lorenzo Fossati and was assigned to Cosmo S.p.A. and then to Cosmo. The patent is generally directed to "[c]ontrolled-release oral pharmaceutical compositions containing as active ingredient 5-amino-salicylic acid, comprising: a) an inner lipophilic matrix…[and] b) an outer hydrophilic matrix…."  '720 patent, Abstract. The '720 patent issued from U.S. Patent Application No. 10/009,491 ("the '491 application"), filed on June 8, 2000.

The '720 patent discloses forming the lipophilic matrix by mixing the 5-amino-salicylic acid, commonly referred to as "mesalamine," with lipophilic compounds to form a dispersion. This dispersion is then reduced in size to form lipophilic matrix granules:

> The compositions of the invention can be obtained with a method comprising the following steps:
>
> a) the active ingredient is first inglobated in a low melting excipient or mixture of excipients, while heating to soften and/or melt the excipient itself, which thereby incorporates the active ingredient by simple dispersion.
>
> After cooling at room temperature an inert matrix forms, which can be reduced in size to obtain matrix granules containing the active ingredient particles.
>
> b) the inert matrix granules are subsequently mixed together with one or more hydrophilic water-swellable excipients.
>
> *       *       *
>
> The inert lipophilic matrix is reduced into granules by an extrusion and/or granulation process, or any other known processes which retain the homogeneous dispersion and matrix structure of the starting mixture.

'720 patent, col. 2, ll. 50-59; col. 3, ll. 14-17.

The foregoing passage highlights the first of the critical features of the dual matrix system that Shire's construction ignores:  that the active ingredient (mesalamine) is homogenously dispersed within the low melting excipient or mixture of excipients to form the matrix upon cooling thereof. Thereafter, granules formed by reducing the size of the matrix are the same as the cooled matrix—just smaller. Thus, those granules are described by the '720

CASE NO.:  12-60862-CIV-MIDDLEBROOKS/BRANNON

patent as "matrix granules" that also "retain the homogeneous dispersion and matrix structure of the starting mixture."    In other words, the "matrix granules" also have active ingredient (mesalamine) uniformly dispersed therein. In sharp contrast, Shire's construction allows single granules of mesalamine coated with a lipophilic substance to be a "lipophilic matrix." Mesalamine, in these coated granules, is simply not homogenously dispersed. In fact, as discussed in more detail below, during prosecution, Shire strenuously argued the need for a homogenous dispersion of mesalamine in the lipophilic substance and, in fact, amended its claims accordingly.

The '720 patent discloses two embodiments with respect to the outer hydrophilic matrix. In a first embodiment, these lipophilic matrix granules are mixed with hydrophilic compounds to form a dispersion of the lipophilic matrix granules within a hydrophilic matrix. In a second embodiment, italicized below, in addition to the lipophilic matrix granules, free mesalamine is separately mixed with the hydrophilic compounds to form a dispersion of the lipophilic matrix granules and free mesalamine within a hydrophilic matrix:

> The lipophilic matrix granules containing the active ingredient are mixed the [sic] with hydrophilic compounds cited above in a weight ratio typically ranging from 100:0.5 to 100:20 (lipophilic matrix: hydrophilic matrix). *Part of mesalazine can optionally be mixed with hydrophilic substances to provide compositions in which the active ingredient is dispersed both in the lipophilic and the hydrophilic matrix*, said compositions being preferably in the form of tablets, capsules and/or minitablets.
>
> The compression of the mixture of lipophilic matrix, hydrogel-forming compounds *and, optionally, active ingredient non inglobated in the lipophilic matrix*, yields a macroscopically homogeneous structure in all its volume, namely a matrix containing a dispersion of the lipophilic granules in a hydrophilic matrix.

'720 patent at col. 3, ll. 31-45.

This passage highlights the second of the critical features of the dual matrix system that Shire's construction ignores:  that the active ingredient (mesalamine) is homogenously dispersed both in the lipophilic matrix *and*, separately, in the outer hydrophilic matrix. Again, Shire amended its claims to emphasize this structure.

CASE NO.:  12-60862-CIV-MIDDLEBROOKS/BRANNON

The '720 patent also discloses five examples for forming the controlled-release oral pharmaceutical compositions. In each of the examples two lipophilic excipients are used to form the lipophillic matrix granules.

> 770 g of 5-aminosalicylic acid are added in a kneader with 20 g of *carnauba wax* and 50 g of *stearic acid* with heating until homogeneous dispersion, then extruded into small granules while cold.

'720 patent at col. 4, ll. 9-13 (emphasis added).

> 1000 g of 5-aminosalicylic acid are added in a kneader with 10 g of *carnauba wax* and 20 g of *stearic acid* with heating until homogeneous dispersion, then extruded into small granules while cold or directly granulated in a high rate mixer.

'720 patent at col. 4, ll. 34-38 (emphasis added).

> 850 g of 5-aminosalicylic acid are added in granulator/kneader with 9 g of *beeswax* and 22 g of *palmitic acid* with heating, until homogeneous dispersion; then worked to a granulate in a high shear granulating device.

'720 patent at col. 4, ll. 55-58 (emphasis added).

> 1100 g of 5-aminosalicylic acid are added in granulator/kneader with 10 g of *wax carnauba* and 20 g of *stearic acid*.

'720 patent at col. 5, ll. 8-9 (emphasis added).

> 1200 g of 5-aminosalicylic acid are added in mixer with 10 g of *carnauba wax* and 20 g of *stearic acid*, with heating until homogeneous dispersion, then cold extruded into small granules or directly granulated in the high rate mixer.

'720 patent at col. 5, ll. 31-34 (emphasis added). In each disclosed example, after these granules are formed a small amount of magnesium stearate is added.

> After a first mixing step for homogeneously dispersing the powders, 60 g of microcrystalline cellulose and 5 g of magnesium stearate are added.

'720 patent at col. 4, ll. 17-19.

> After a first mixing step, 11 g of silica colloidal and 11 g of magnesium stearate are added.

'720 patent at col. 4, ll. 41-43.

CASE NO.:  12-60862-CIV-MIDDLEBROOKS/BRANNON

> The resulting granules are then loaded into a mixer which is added in succession with 45.5 g of hydroxypropyl methylcellulose, 45.5 g of microcrystalline cellulose, 20 g of sodium starch glycolate, 22 g of colloidal silica and 22 g of magnesium stearate.

'720 patent at col. 4, ll. 58-63.

> 49.5 g of hydroxypropyl methylcellulose and 12 g of sodium alginate are thoroughly mixed, then added with 5 g of calcium carbonate, 34.5 g of microcrystalline cellulose and 11 g of magnesium stearate.

'720 patent at col. 5, ll. 15-19.

> After a first mixing step, 80 g of sodium carbonate and 5 g of magnesium stearate are added.

'720 patent at col. 5, ll. 38-39.

### C.    The Asserted Claims

Claims 1-4 of the '720 patent, of which only claim 1 is independent, read as follows:

> 1.    Controlled-release oral pharmaceutical compositions containing as an active ingredient 5-amino-salicylic acid, comprising:

> a) an inner lipophilic matrix consisting of substances selected from the group consisting of unsaturated and/or hydrogenated fatty acid, salts, esters or amides thereof, fatty acid mono-, di- or triglycerids, waxes, ceramides, and cholesterol derivatives with melting points below 90° C , and wherein the active ingredient is dispersed both in said the lipophilic matrix and in the hydrophilic matrix;

> b) an outer hydrophilic matrix wherein the lipophilic matrix is dispersed, and said outer hydrophilic matrix consists of compounds selected from the group consisting of polymers or copolymers of acrylic or methacrylic acid, alkylvinyl polymers, hydroxyalkyl celluloses, carboxyalkyl celluloses, polysaccharides, dextrins, pectins, starches and derivatives, alginic acid, and natural or synthetic gums;

> c) optionally other excipients;

> wherein the active ingredient is present in an amount of 80 to 95% by weight of the total composition, and wherein the active ingredient is dispersed both in the lipophilic matrix and in the hydrophilic matrix.

8

CASE NO.:  12-60862-CIV-MIDDLEBROOKS/BRANNON

'720 patent at col. 6, ll. 7-31.

Claims 2-4 both depend from claim 1 and are set forth below:

> 2. Compositions as claimed in claim 1, wherein 5-aminosalicylic acid is dispersed in a molten lipophilic matrix by kneading, extrusion and/or granulation.

> 3. Compositions as claimed in claim 1, in the form of tablets, capsules, mintablets.

> 4. A process for the preparation of the compositions of claim 1, which comprises:

> a) melt granulation of at least one portion of the active ingredient with the lipophilic excipients with melting point lower than 90° C;

> b) mixing the granules from step a) with the hydrophilic excipients and subsequent tabletting or compression.

*Id.* at col. 6, ll. 32-43.

**D.      Prosecution History**

> **1.      Original Claims 1-11 and the December 13, 2001 Preliminary Amendment**

The '491 application, which issued as the '720 patent, was filed with original claims 1-11. *See* International Publication No. WO 00/76481 A1 at 11-12 (WL00059374-375)[1]. Original claim 1, the sole independent claim, and two of the dependent claims 8 and 9 read as follows:

> 1.      Controlled-release      oral      pharmaceutical compositions containing as an active ingredient 5-amino-salicylic acid, comprising:

> a) an inner lipophilic matrix consisting of substances with melting points below 90° C in which the active ingredient is at least partly inglobated;

> b) an outer hydrophilic matrix in which the lipophilic matrix is dispersed;

---

[1] The prosecution history for the '720 patent is attached as Exhibit 1 at Bates stamps WL00059270 to WL00059512.

CASE NO.:  12-60862-CIV-MIDDLEBROOKS/BRANNON

c) optionally other excipients.

\*            \*            \*

8.    Compositions as claimed in any one of the above claims, in the form of tablets, capsules, minitablets, wherein the active ingredient is completely contained inside the lipophilic matrix.

9.    Compositions as claimed in any of claims 1-7, in the form of tablets, capsules, minitablets, wherein the active ingredient is dispersed both in the hydrophilic matrix and the lipophilic matrix.

*Id.* By Preliminary Amendment dated December 13, 2001, Applicants amended the claims to remove multiple dependencies but did not substantively change the claim language. *See* Preliminary Amendment, Dec. 13, 2001 at 1-2 (WL00059382-383).

**2.    January 30, 2003 Office Action Rejecting Original Claims 1-11**

On January 30, 2003, the Examiner issued a Non-Final Rejection rejecting claims 1-11. *See* Non-Final Office Action, Jan. 30, 2003 ("Non-Final Office Action") (WL00059324-330).

**a.    Rejection Based on Franco**

The Examiner rejected claims 1-11 as obvious in view of United Kingdom Patent Application No. GB 2 245 492 to Franco Pozzi and Pia Furiani ("Franco").[2]  *Id.* at 3-4 (WL00059327-328). The Examiner cited portions of Franco disclosing an active core coated by a lipophilic layer, which was in turn coated by a hydrophilic layer. *See id.* (citing pages 7-8 of Franco for the disclosure of the lipophilic and hydrophilic layers). The Examiner also noted that Franco disclosed non-lipophilic substances in the lipophilic layer. *Id.* at 4 (WL00059328). But the Examiner noted that Applicants' own specification disclosed other materials as mixed with the lipophilic matrix, including magnesium stearate, and therefore the Examiner asserted that the "consisting of substances" phrase from original claim 1 did not preclude the presence of other substances. *Id.*

_____

[2] It appears that "Franco" is actually the first-named inventor's first name but Watson refers herein to this reference as "Franco" to be consistent with the Examiner's terminology.

10

CASE NO.:  12-60862-CIV-MIDDLEBROOKS/BRANNON

b.       **Other Rejections**

The Examiner also rejected claims 1-5, 8, 9, and 11 as being anticipated and rendered obvious by United States Patent No. 5,593,690 to Akiyama et al. ("Akiyama"). *See* First Office Action at 2-4 (WL00059326-328). The Examiner also rejected claims 1-9 and 11 as rendered obvious by the combination of United States Patent No. 5,851,555 to Sanghvi et al. ("Sanghvi") and United States Patent No. 6,395,300 to Straub et al. ("Straub"). *Id.* at 5 (WL00059329).

3.       **Applicants' April 29, 2003 Response**

On April 29, 2003, the Applicants responded to the Office Action of January 30, 2003, and amended claim 1 to add the phrase "and where the active ingredient is present in an amount of 80 to 95% by weight of the total composition" and canceled claim 10.  *See* Amendment, Apr. 29, 2003 at 1-2 ("Non-Final Amendment") (WL00059314-315).

a.       **Arguments to Overcome the Rejection Based on Franco**

Applicants attempted to distinguish the claimed invention from Franco by asserting the following:

> FRANCO et al. disclose oral compositions comprising a core containing an active ingredient coated by a lipophilic layer and a surfactant with HLB ranging from 10 to 16, in amounts from 5 to 20% by weight of the lipophilic material. The core can be in the form of a tablet or capsule. FRANCO et al. disclose immediate and controlled release compositions.
>
> The compositions are based on a "reservoir" system rather than an actual matrix. In other words, the active ingredient is confined within a core which acts as a reservoir from which the active ingredient is released via the erosion of the outer coating.
>
> However, as to the present invention, *the active ingredient is dispersed in a lipophilic matrix*, not in an isolated core. Thus, the present invention discloses an inner lipophilic matrix and an outer hydrophilic matrix. Applicants believe that FRANCO et al. disclose an inner core in the form of a tablet with an outer lipophilic coating.

*Id*. at 5-6 (WL00059318-319) (emphasis added).

Thus, the '720 Applicants clearly distinguished Franco's mesalamine-containing core coated with a lipophilic layer from the claimed lipophilic matrix because mesalamine would not then be "dispersed" in the lipophilic substance. Yet, Shire's proposed construction of "lipophilic

11

matrix" flatly contradicts this position by allowing a single mesalamine granule coated with a lipophilic substance (or a collection of such granules) to be a lipophilic matrix.

Moreover, in recognizing that Franco's mesalamine-containing core also contained magnesium stearate, a lipophilic substance, the '720 Applicants argued that Franco used magnesium stearate only as a conventional lubricant. *Id.* at 6. (WL00059319). Specifically, Applicants stated as follows:

> As to the magnesium stearate, magnesium stearate is included in the core taught by FRANCO et al. However, the present invention does not require that magnesium stearate be used in the lipophilic matrix. The excipient may be used in the final tabletting step according to its *conventional lubricant properties*.

*Id.* (emphasis added).

Accordingly, the '720 Applicants also expressly understood that the claims did not cover a core structure, comprising mesalamine compressed with magnesium stearate as a lubricant, because that structure did not create a lipophilic matrix having mesalamine homogenously distributed therein.[3]

### b.      Arguments Made to Overcome the Other Rejections

With respect to Akiyama, Applicants argued that the amendment to the claim requiring "active ingredient is present in an amount of 80 to 95% by weight of the total composition" rendered the claimed invention patentable over Akiyama. *Id*. at 3-4 (WL00059316-317).

Applicants also emphasized the multi-matrix system of the claimed invention:

> It is respectfully submitted that AKIYAMA et al. fail to disclose or suggest the claimed invention. The claimed invention relates to a composition comprising *two matrices*. The *matrices* comprise a lipophilic inner matrix and an hydrophilic outer matrix. The inner lipophilic matrix consists of substances with melting points below 90°C in which an active ingredient is at least partially inglobated. The *two matrices* allow for the incorporation of high amounts of active ingredients in the claimed composition and provide for the control and extended dissolution of the active ingredient. In fact,

--------

[3] This was made even clearer when the '491 Applicants expressly argued that Franco did not contain a lipophilic matrix. *See* WL00059300-301.

> the active ingredient may be present in the composition in an amount of 80 to 95% by weight of the total composition.
> \*            \*            \*
> Finally, applicants note that the coating of the lipophilic matrix is optional according to AKIYAMA et al. and may indifferently consist of either lipophilic substances or hydrophilic substances. As a result, applicants believe that AKIYAMA et al. do not teach the characteristics of the *two matrices* of the claimed invention.

*Id.* at 3-4 (WL00059316-317) (emphasis added).

Similarly, to overcome the rejection based on Sanghvi and Straub, Applicants argued:

> Applicants respectfully submit that the SANGHVI et al. publication fails to disclose a system containing *two separate matrices.* The SANGHVI et al. publication merely discloses formulations obtained by mixing together hydrophilic and lipophilic substances into a single matrix.
> \*            \*            \*
> While the publications might teach the advantageous results of using a lipophilic matrix, the publications fail to disclose or suggest a composition comprising a combination of *two separate matrices.* In fact, there is no mention or suggestion of a composition utilizing *different control mechanisms*.

*Id.* at 6-7 (WL00059319-320) (emphasis added).

Thus, the '720 Applicants clearly distinguished the prior art on the basis that the claimed dosage forms required two distinct matrices, defined by their spatial orientation to each other and control mechanisms, *i.e.*, an "*inner lipophilic* matrix" and an "*outer hydrophilic* matrix" to control release.

### 4.  June 9, 2003 Final Office Action Rejecting All Pending Claims Based on Franco

In a Final Office Action dated June 9, 2003, the Examiner rejected all of pending claims 1-9 and 11. *See* Final Office Action (June 9, 2003) ("Final Office Action") (WL00059309-313). The Examiner maintained the obviousness rejection based on Franco,  *id.* at 2-3 (WL00059310-311),   because the claims did not expressly recite that the active is "dispersed" in the lipophilic matrix, as argued by the '720 Applicants. The Examiner expressly stated that the claim language "partly inglobated" was not sufficient to define a dispersion of active in a lipophilic substance, as disclosed in the specification:

> Applicant argues that Franco teaches a composition based on a reservoir, wherein the active ingredient is confined within a core

CASE NO.:  12-60862-CIV-MIDDLEBROOKS/BRANNON

and will release via the erosion of the outer coating. However, as to the present invention, the active ingredient is dispersed in a lipophilic matrix. *In response to applicant's argument that the reference does not show certain feature of applicant's invention, it is noted that the feature upon which applicant relies (i.e., the active ingredient is dispersed in a lipophilic matrix) is not recited in the rejected claims.* Although the claims are interpreted in light of the specification, limitations from the specification are not read into the claims. *See In re Van Geuns*, 988 F.2d 1181, 26 USPQ2d 1057 (Fed. Cir. 1993). *The limitation "active ingredient is at least partly inglobated" does not limit the claim to "active ingredient is dispersed in a lipophilic matrix" as alleged by the applicant.*

*Id.* at 3-4 (WL00059311-313) (emphasis added).

### 5.    Applicants' October 9, 2003 Amendment and Arguments to Overcome the Rejection Based on Franco

On October 9, 2003 Applicants responded to the Final Office Action by amending the claims and arguing the amended claims were patentable over Franco. *See* Amendment After Final Rejection (Oct. 9, 2003) ("After Final Amendment") (WL00059295-306). Applicants amended claim 1 by limiting the substances that could form the "inner lipophilic matrix" and the "outer hydrophilic matrix." *Id.* at 2 (WL0059296). Significantly, Applicants also amended claim 1 by changing "the active ingredient *is at least partly inglobated*" in the inner lipophilic matrix to "the active ingredient *is dispersed in said lipophilic matrix*." *Id.* After the amendments, claim 1 read as follows, with language added by the amendment underlined and language deleted from the claim struck through.

Controlled-release oral pharmaceutical compositions containing as an active ingredient 5-amino-salicylic acid, comprising:

a) an inner lipophilic matrix consisting of <u>substances selected from the group consisting of unsaturated and/or hydrogenated fatty acid, salts, esters or amides thereof, fatty acid mono-, di- or triglycerids, waxes, ceramides, and cholesterol derivatives</u> with melting points below 90°C ~~in which~~ <u>and wherein</u> the active ingredient is ~~at least partly inglobated~~ <u>dispersed in said lipophilic matrix;</u>

b) an outer hydrophilic matrix <u>wherein the lipophilic matrix is dispersed, and said outer hydrophilic matrix consists of compounds selected from the group consisting of polymers or copolymers of acrylic or methacrylic acid, alkylvinyl polymers,</u>

14

> hydroxyalkyl celluloses, carboxyalkyl celluloses, polysaccharides, dextrins, pectins, starches and derivatives, alginic acid, and natural or synthetic gums; in which the lipophilic matrix is dispersed;
>
> c) optionally other excipients; and
>
> wherein the active ingredient is present in an amount of 80 to 95% by weight of the total composition.

*Id.* at 2-3 (WL00059296-297).

Applicants again distinguished the multi-matrix system of the claimed invention from the coated reservoir structure of Franco in which mesalamine is contained within a core coated by a lipophilic substance:

> Applicants respectfully submit that FRANCO et al. do not teach an inner lipophilic matrix or an outer hydrophilic matrix as set forth in the claimed invention.
>
> FRANCO et al. is directed to a composition based on a "reservoir" system. The composition taught by FRANCO et al. is not based on an actual matrix. The active ingredient is confined within a core which acts as a reservoir from which the active ingredient is released via erosion of the outer coating (see FRANCO et al., page 5, lines 25-30; page 13, lines 5-25; and page 14, lines 10-15).
>
> However, the present invention relates to a "multimatrix system" and not to a reservoir system. This means that the active principle is dispersed in a matrix and is not contained in a core. In order to better explain the differences between a "reservoir system" and a "matrix system", applicants have enclosed four publications in which the characteristics and the differences between the two systems are further explained.

*Id.* at 6-7 (WL00059300-301).    Applicants quoted passages from those publications distinguishing reservoir devices from matrix devices, *e.g.*:

> Reservoir devices, as the name implies, are characterized by a core of drug, the reservoir surrounded by a polymeric membrane….Matrix devices, as the name implies, consists of drugs dispersed homogeneously throughout a polymer matrix.

*Id.* at 7 (WL00059301).

**6.    April 5, 2004 Interview and April 5, 2004 Notice of Allowance**

The Examiner refused to enter the amendment that "the active ingredient is dispersed in

CASE NO.:  12-60862-CIV-MIDDLEBROOKS/BRANNON

said lipophilic matrix" stating that it raised new issues that required "further search and examination." *See* Advisory Action (November 21, 2003) at 1-2 (WL00059292-293). The amendment was entered upon Applicants' filing of a Request for Continued Examination (*see* WL00059288-290). The '720 Applicants conducted a telephonic interview with the Examiner on April 5, 2004 that resulted in yet an additional amendment to the claims. *See* Examiner-Initiated Interview Summary at 1-2 ("Interview Summary") (WL00059280-281), stating:  "to place the application in condition for allowance…suggested [Applicants] incorporate the limitation 'wherein the active ingredient is dispersed both in the hydrophilic matrix and in the lipophilic matrix."  The '720 Applicants authorized the Examiner to make this amendment and to cancel claims 4 and 6-8. *Id.* On that same day, the Examiner allowed the remaining claims. *See* Notice of Allowability (Apr. 5, 2004) (WL00059276-279). The Examiner provided the following reasons for allowing the claims:

> The reason for allowance of the claims is the inclusion of active ingredient is dispersed in both, the lipophilic and the hydrophilic matrices. The cited reference [Franco] teaches the active ingredient being within the core, not dispersed in the matrices.

*Id.* at 3 (WL00059278). Applicants did not respond to these reasons for allowance.

Thus, to obtain the '720 patent, Applicants had to amend the claims to reflect that (1) a mesalamine-containing core coated with a lipophilic substance did not constitute a "lipophilic matrix" because it did not have mesalamine homogeneously dispersed therein and to require (2) the inclusion of mesalamine dispersed in an outer hydrophilic matrix, separate from its presence as a homogenous dispersion within a inner lipophilic matrix.

**V.     Argument**

      **A.     The General Law Governing Claim Construction**

"The words of a claim 'are generally given their ordinary and customary meaning'" according to "a person of ordinary skill in the art . . . at the time of the invention." *Phillips v. AWH Corp.*, 415 F.3d 1303, 1312-13 (Fed. Cir. 2005). In construing claim language, courts look to "those sources available to the public that show what a person of skill in the art would have understood disputed claim language to mean."  *Id.* at 1314. Thus, "the court starts the [claim construction] process by reviewing the same resources as would that person, viz., the patent specification and the prosecution history."  *Id.* at 1313. The prosecution history is particularly informative where "the inventor limited the invention in the course of prosecution, making the

claim scope narrower than it otherwise would be." *Id.* at 1317. The scope of an invention may be limited during the course of prosecution both by amendments made by the applicant to the pending claims, as well as by arguments the applicant made to overcome prior art. *Omega Eng'g, Inc. v. Raytek Corp.*, 334 F.3d 1314, 1324-25 (Fed. Cir. 2003); *see also Reckitt Benckiser Inc. v. Watson Laboratories, Inc.-Florida*, No. 2011-1231, July 7, 2011, 2011 WL 2648723 (Fed. Cir. (Fla.) 2011) (unpublished) (affirming Judge Dimitrouleas's finding of disclaimer by narrowing amendment).

### B.     The Person of Ordinary Skill in the Art

The '720 patent concerns the pharmaceutical sciences and more particularly controlled-release pharmaceutical dosage forms. A person of ordinary skill in the art would be a person with an M.S. or Ph.D. in pharmaceutical sciences or a related area and 3-5 years of experience in pharmaceutical formulation development, especially in the field of extended- or controlled-release oral solid dosage forms.

### C.     Analysis

The parties dispute the proper construction of eight claim terms. Watson's proposed constructions for each of these terms follows directly from the intrinsic evidence, *i.e.*, the claim language itself, the specification, and the prosecution history.

### 1.     "dispersed"

| Shire's Proposed Construction | Watson's Proposed Construction |
|---|---|
| "sufficiently mixed to incorporate one substance with another" | "homogeneously mixed or combined" |

As discussed above, the term "dispersed" was added to claim 1 to distinguish Franco's mesalamine-containing core coated with a lipophilic substance from a homogenous dispersion of mesalamine in a lipophilic  substance. Applicants first attempted to make this distinction based on mere argument, without amending the claims.

> FRANCO et al. disclose oral compositions comprising a core containing an active ingredient coated by a lipophilic layer and a surfactant with HLB ranging from 10 to 16, in amounts from 5 to 20% by weight of the lipophilic material. The core can be in the form of a tablet or capsule. FRANCO et al. disclose immediate and controlled release compositions.

17

CASE NO.:   12-60862-CIV-MIDDLEBROOKS/BRANNON

> The compositions are based on a "reservoir" system rather than an actual matrix. In other words, the active ingredient is confined within a core which acts as a reservoir from which the active ingredient is released via the erosion of the outer coating.
>
> However, as to the present invention, *the active ingredient is dispersed in a lipophilic matrix*, not in an isolated core. Thus, the present invention discloses an inner lipophilic matrix and an outer hydrophilic matrix. Applicants believe that FRANCO et al. disclose an inner core in the form of a tablet with an outer lipophilic coating.

Non-Final Amendment at 5-6 (WL00059318-319) (emphasis added).

The Examiner maintained the rejection noting that the claims did not reflect the "dispersed" concept:

> Applicant argues that Franco teaches a composition based on a reservoir, wherein the active ingredient is confined within a core and will release via the erosion of the outer coating. However, as to the present invention, the active ingredient is dispersed in a lipophilic matrix. *In response to applicant's argument that the reference does not show certain feature of applicant's invention, it is noted that the feature upon which applicant relies (i.e., the active ingredient is dispersed in a lipophilic matrix) is not recited in the rejected claims.* Although the claims are interpreted in light of the specification, limitations from the specification are not read into the claims. *See In re Van Geuns*, 988 F.2d 1181,26 USPQ2d 1057 (Fed. Cir. 1993). *The limitation "active ingredient is at least partly inglobated" does not limit the claim to "active ingredient is dispersed in a lipophilic matrix" as alleged by the applicant.*

Final Office Action at 3-4 (WL00059311-313).

Thereafter, Applicants amended claim 1 to change "the active ingredient *is at least partly inglobated*" in the inner lipophilic matrix to "the active ingredient *is dispersed in said lipophilic matrix*."  After Final Amendment at 2 (WL00059296). Applicants also amended claim 3 by replacing "inglobated" with "dispersed."  *Id.* at 3 (WL00059297).

Applicants also reiterated that Franco did not disclose an inner lipophilic matrix:

> Applicants respectfully submit that FRANCO et al. do not teach an inner lipophilic matrix or an outer hydrophilic matrix as set forth in the claimed invention.
>
> FRANCO et al. is directed to a composition based on a "reservoir" system. The composition taught by FRANCO et al. is not based on

CASE NO.:  12-60862-CIV-MIDDLEBROOKS/BRANNON

> an actual matrix. The active ingredient is confined within a core
> which acts as a reservoir from which the active ingredient is
> released via erosion of the outer coating (see FRANCO et al., page
> 5, lines 25-30; page 13, lines 5-25; and page 14, lines 10-15).

*Id*. at 6-7 (WL00059300-301).

Thus, the prosecution history clearly establishes that the '720 Applicants described their invention as requiring mesalamine homogeneously dispersed within a lipophilic substance in contrast to the prior art reservoir structure of Franco in which mesalamine resided within a core merely coated by a lipophilic substance.

Because the claims, before the amendment adding the "dispersed" language, recited that the mesalamine must be at least "partly inglobated," it is clear that the Examiner did not consider "partly inglobated" adequate to distinguish the claimed invention from the coated core structure of Franco. Non-Final Office Action at 3-4 (WL00059327-328) (citing pages 7-8 of Franco for the disclosure of the lipophilic and hydrophilic layers).  Therefore, to the extent that the claims, before the amendment, covered the coated core structure of Franco, the amendment requiring the mesalamine to be "dispersed" in the lipophilic substances to create the "lipophilic matrix" no longer covered the coated core structure of Franco.

Therefore, by amending the claims to require that the mesalamine be "dispersed" in the lipophilic substances to form the lipophilic matrix and arguing this distinction over Franco, the '720 Applicants surrendered any right to claim scope in which a lipophilic matrix encompasses a structure in which active ingredient is merely coated with a lipophilic layer.[4] But Shire's proposed construction improperly attempts to do exactly that.

Watson's proposed construction for "dispersed," requiring a homogenous mixture of the active ingredient throughout the lipophilic substance to form a lipophilic matrix is consistent with how the term is used throughout the specification. The specification begins with a discussion of prior art mesalamine delivery systems including a "reservoir" system, "i.e….not

---

[4] *See*, *e.g.*, *Bd. of Regents of the Univ. of Texas Sys. v. BENQ Am. Corp.*, 533 F.3d 1362, 1370 (Fed. Cir. 2008) (rejecting plaintiff's proposed claim construction for "syllabic element" which was added by amendment because under the construction the disclosure of the prior art reference "would teach the portion of the claim  that was amended to distinguish" the reference, which would be a "nonsensical result").

CASE NO.:  12-60862-CIV-MIDDLEBROOKS/BRANNON

macroscopically homogeneous along all the symmetry axis of the final form." '720 patent at col. 1, ll. 62-65. In contrast to the "reservoir" system of the prior art, the applicants disclose and claim a multi-matrix delivery system.

> The invention provides controlled release oral pharmaceutical compositions containing 5-amino-salicylic acid as the active ingredient, comprising: a) *an inner lipophilic matrix* consisting of substances with melting point below 90° C. in which the active ingredient is at least partially inglobated; b) *an outer hydrophilic matrix* in which the lipophilic matrix is dispersed; c) optionally other excipients.

'720 patent at col. 2, ll. 36-44 (emphasis added).

The '720 patent's description of making this dispersion clearly shows that the mesalamine is dispersed homogenously within, not merely coated by, a lipophilic substance:

> The compositions of the invention can be obtained with a method comprising the following steps:
>
> a) the active ingredient is first inglobated in a low melting excipient or mixture of excipients, while heating to soften and/or melt the excipient itself, which thereby incorporates the active ingredient by simple dispersion.
>
> After cooling at room temperature an inert matrix forms, which can be reduced in size to obtain matrix granules containing the active ingredient particles.
>
> b) the inert matrix granules are subsequently mixed together with one or more hydrophilic water-swellable excipients.
>
>         *      *      *
>
> The inert lipophilic matrix is reduced into granules by an extrusion and/or granulation process, or any other known processes which retain the homogeneous dispersion and matrix structure of the starting mixture.

'720 patent, col. 2, ll. 50-59; col. 3, ll. 14-17.

Thus, the lipophilic matrix has active ingredient homogenously dispersed therein, both in bulk form after cooling, and in granule form by size reduction. In sharp contrast, Shire's construction allows single granules of active coated with a lipophilic substance to be a "lipophilic matrix". Shire cannot credibly argue, in view of the specification and prosecution

CASE NO.:  12-60862-CIV-MIDDLEBROOKS/BRANNON

history, that mesalamine merely coated with a lipophilic substance, constitutes a "lipophilic matrix" in which mesalamine is homogenously dispersed.

Neither the term "sufficiently" nor "incorporate" in Shire's proposed construction clearly requires a homogenous dispersion of mesalamine within the lipophilic substance. Although the word "incorporate" appears in the '720 patent, the actual working examples in the '720 patent make clear that the active is not merely "incorporated" in the lipophilic substance. Instead, the process results in a "homogeneous dispersion" that is a "mixture" obtained by "mixing" or "kneaded" using a "mixer."  This process results in a "lipophilic matrix" in which mesalamine is homogenously dispersed, not merely coated by a lipophilic substance. This, of course, is the very distinction that Shire argued during prosecution to distinguish Franco and amended the claims to reflect. Shire's claim construction cannot now undo that which the public is reasonably entitled to rely.

> **2.**    **"wherein the active ingredient is dispersed both in [said] lipophilic matrix and in the hydrophilic matrix"**

| Shire's Proposed Construction | Watson's Proposed Construction |
|---|---|
| "wherein mesalamine is incorporated with the lipophilic matrix and the hydrophilic matrix" | "active ingredient is in direct contact with and dispersed homogeneously within both the lipophilic matrix and within the hydrophilic matrix" |

As described above, the specification discloses two embodiments:  one in which active ingredient is homogeneously dispersed solely in the inner lipophilic matrix and another in which free active ingredient is additionally and separately dispersed within the outer hydrophilic matrix:

> The lipophilic matrix granules containing the active ingredient are mixed the with hydrophilic compounds cited above in a weight ratio typically ranging from 100:0.5 to 100:20 (lipophilic matrix: hydrophilic matrix). *Part of mesalazine can optionally be mixed with hydrophilic substances to provide compositions in which the active ingredient is dispersed both in the lipophilic and the hydrophilic matrix*, said compositions being preferably in the form of tablets, capsules and/or minitablets.
>
> The compression of the mixture of lipophilic matrix, hydrogel-forming compounds *and, optionally, active ingredient non inglobated in the lipophilic matrix*, yields a macroscopically

21

CASE NO.:  12-60862-CIV-MIDDLEBROOKS/BRANNON

> homogeneous structure in all its volume, namely a matrix containing a dispersion of the lipophilic granules in a hydrophilic matrix.

'720 patent at col. 3, ll. 31-45 (emphasis added).

The '720 Applicants, by referring to "non inglobated" active  mixed with the hydrophilic compounds, clearly distinguished active that, on the one hand, is dispersed in the lipophilic substance creating the "lipophilic matrix" and active, on the other hand, that is not dispersed in the lipophilic substance. The proper construction of the '720 claims requires both. Watson's construction, requiring "direct contact" of the active with the hydrophilic matrix reflects this distinction. Shire's construction does not as it essentially would vitiate the distinction between active within the inner lipophilic matrix and active separate from the lipophilic matrix.

Watson's construction is further supported by originally-filed claims 8 and 9:

> 8.      Compositions as claimed in any one of the above claims, in the form of tablets, capsules, minitablets, *wherein the active ingredient is completely contained inside the lipophilic matrix.*

> 9.      Compositions as claimed in any of claims 1-7, in the form of tablets, capsules, minitablets, *wherein the active ingredient is dispersed both in the hydrophilic matrix and the lipophilic matrix.*

*See* Int'l Publ'n No. WO 00/76481 A1 at 11-12 (WL00059374-375) (emphasis added).

The doctrine of claim differentiation provides that two claims should not be interpreted to have the same scope.[5]   Accordingly, claims 8 and 9 are presumed to cover different embodiments. Hence, claim 8, reciting that the active "is completely" contained inside the lipophilic matrix was directed to the embodiment in which active ingredient is only present in the lipophilic matrix. Claim 9, reciting that the active is "dispersed in both the hydrophilic and the lipophilic matrix" was directed to the embodiment in which active ingredient was additionally present in the hydrophilic matrix. The specification further described the embodiment of claim 9

---

[5]*See*, *e.g.*, *Beachcombers v. WildeWood Creative Prods., Inc.*, 31 F.3d 1154, 1162 (Fed. Cir. 1994)  (holding that a construction of a claim that renders another claim "superfluous" is "presumptively unreasonable").

as requiring, in addition to active ingredient dispersed in the lipophilic substance, "active ingredient non inglobated in the lipophilic matrix," *i.e.*, active ingredient separately dispersed throughout the outer hydrophilic matrix.

Because claim 1 was amended to essentially incorporate the structure of claim 9, requiring active separately present in both matrices, Applicants surrendered any right to the claim scope covered by original claim 8, requiring active in only the lipophilic matrix.[6] As described above, the Examiner conducted an interview with Applicants after the Applicants submitted an amendment in response to a Final Rejection based on Franco. During the interview, the Examiner "to place the application in condition for allowance…suggested [Applicants] incorporate the limitation 'wherein the active ingredient is dispersed both in the hydrophilic matrix and in the lipophilic matrix" into claim 1. Interview Summary at 2 (WL00059280). The Applicants authorized the Examiner to make this amendment and to cancel claims 4 and 6-8. *Id.* On that same day, the Examiner allowed the remaining claims. *See* Notice of Allowability (Apr. 5, 2004) (WL00059276-279). The Examiner provided the following reasons for allowing the claims.

> The reason for allowance of the claims is the inclusion of active ingredient is dispersed in both, the lipophilic and the hydrophilic matrices. The cited reference [Franco] teaches the active ingredient being within the core, not dispersed in the matrices.

*Id.* at 3 (WL00059278). Applicants did not respond to these reasons for allowance.

Shire now attempts to undo this distinction as well. Shire's construction would ostensibly cover a structure in which mesalamine granules merely coated with a lipophilic substance are dispersed in a tablet together with a hydrophilic substance. Shire's construction vitiates the requirement that the mesalamine be separately included in the hydrophilic matrix, not by virtue of its presence in the same component that Shire would describe as the "inner lipophilic matrix." Therefore, Shire clearly gave up any right to any pharmaceutical composition that does not

---

[6] *See*, *e.g.*, *Graham v. John Deere Co. of Kansas City*, 383 U.S. 1, 34, 86 S. Ct. 684, 702, 15 L. Ed. 2d 545 (1966) ("Here, the patentee obtained his patent only by accepting the limitations imposed by the Examiner. The claims were carefully drafted to reflect these limitations and Cook Chemical is not now free to assert a broader view of Scoggin's invention.").

CASE NO.:  12-60862-CIV-MIDDLEBROOKS/BRANNON

contain free mesalamine additionally dispersed in a hydrophilic matrix and therefore "in direct contact with" the hydrophilic matrix.

> ### 3.     "matrix"

| Shire's Proposed Construction | Watson's Proposed Construction |
|---|---|
| "a macroscopically homogeneous structure in all its volume" | "a pharmaceutical matrix, consisting of active ingredient dispersed homogeneously throughout, that controls or delays release of the active ingredient" |

This term is again best understood with reference to the disclosure of the '720 patent and its prosecution history. Particularly informative are the statements the '720 Applicants made in distinguishing the prior art (Franco) active-containing core or "reservoir" devices coated with a lipophilic material from the claimed lipophilic matrix in which active ingredient is homogenously dispersed.  Under Shire's construction, a lipophilic matrix could be formed by coating a single particle of mesalamine with a layer of a lipophilic excipient. Yet, this is precisely the description that, during prosecution to distinguish Franco, Shire said did not constitute a "matrix" because it did not define a "dispersion" of the active in the lipophilic substance.  Watson's construction is, on the other hand, consistent with the claim language, the specification and the prosecution history because it requires "active ingredient [to be] dispersed homogeneously throughout" the lipophilic substance.

Watson's construction also requires that each matrix provide a release-controlling or delaying property. Shire's does not. Watson's construction is entirely consistent with the specification's reference to  matrices in the context of controlling the release of active ingredient within:

> Inert matrices, for example, generally entail non-linear, but esponential [sic], *release of the active ingredient*.
>
> Hydrophilic matrices have a linear behaviour *until a certain fraction of active ingredient has been released*, then they significantly deviate from linear release.
>
> Bioerodible matrices are ideal to carry out the so-called *"site-release"*, but they involve the problem of finding the suitable enzyme or reactive to degradation. Furthermore, they frequently release in situ metabolites that are not wholly toxicologically inert.

CASE NO.:  12-60862-CIV-MIDDLEBROOKS/BRANNON

'720 patent at col. 1, ll. 32-41 (emphasis added).

Watson's construction is also consistent with the prosecution history during which the '720 Applicants distinguished the claimed dual matrix system from Franco's coated core or "reservoir" system. For example, in the After Final Amendment, Applicants made the following argument to overcome the Final Rejection based on Franco.

> FRANCO et al. is directed to a composition based on a "reservoir" system. The composition taught by FRANCO et al. is not based on an actual matrix. The active ingredient is confined within a core which acts as a reservoir from which the active ingredient is released via erosion of the outer coating (see FRANCO et al., page 5, lines 25-30; page 13, lines 5-25; and page 14, lines 10-15).

> However, the present invention relates to a "multimatrix system" and not to a reservoir system. This means that the active principle is dispersed in a matrix and is not contained in a core. In order to better explain the differences between a "reservoir system" and a "matrix system", applicants have enclosed four publications in which the characteristics and the differences between the two systems are further explained.

After Final Amendment at 6-7 (WL00059300-301). Thus, the '720 Applicants distinguished the release-controlling "reservoir" mechanism of Franco from the release-controlling "matrix" mechanism recited in the claims. In so doing, the '720 Applicants clearly defined a matrix not as merely "a macroscopically homogeneous structure in all its volume" as Shire proposes, but such a structure that, in the context of a pharmaceutical dosage form, also controls or delays the release of active ingredient from the dosage form.

Accordingly, Watson's proposed construction is completely consistent with the intrinsic evidence.

### 4.    "inner lipophilic matrix"

| Shire's Proposed Construction | Watson's Proposed Construction |
|---|---|
| "a matrix including at least one lipophilic excipient, where the matrix is located within one or more other substances" | "a lipophilic matrix that contains active ingredient dispersed homogeneously within that is separate and distinct from, and contained within, an outer hydrophilic matrix" |

CASE NO.:  12-60862-CIV-MIDDLEBROOKS/BRANNON

The specification and prosecution history make clear that the claimed pharmaceutical compositions must contain two matrices and that these matrices must be separate and distinct from one another. For example, the "Disclosure of the Invention" provides:

> The invention provides controlled release oral pharmaceutical compositions containing 5-amino-salicylic acid as the active ingredient, comprising: a) *an inner lipophilic matrix* consisting of substances with melting point below 90° C. in which the active ingredient is at least partially inglobated; b) *an outer hydrophilic matrix* in which the lipophilic matrix is dispersed; c) optionally other excipients.

'720 patent at col. 2, ll. 36-44 (emphasis added).

To overcome a rejection based on Akiyama, Applicants stated:

> It is respectfully submitted that AKIYAMA et al. fail to disclose or suggest the claimed invention. The claimed invention relates to a composition comprising two matrices. The matrices comprise a lipophilic inner matrix and an hydrophilic outer matrix. The inner lipophilic matrix consists of substances with melting points below 90°C in which an active ingredient is at least partially inglobated. The two matrices allow for the incorporation of high amounts of active ingredients in the claimed composition and provide for the control and extended dissolution of the active ingredient. In fact, the active ingredient may be present in the composition in an amount of 80 to 95% by weight of the total composition.

Non-Final Amendment at 3 (WL00059316) (emphasis added).

Similarly, to overcome a rejection based on Sanghvi and Straub, Applicants unambiguously stated that the inner and outer matrices are *separate*:

> Applicants respectfully submit that the SANGHVI et al. publication fails to disclose a system containing *two separate matrices.* The SANGHVI et al. publication merely discloses formulations obtained by mixing together hydrophilic and lipophilic substances into a single matrix.
> *          *          *
> While the publications might teach the advantageous results of using a lipophilic matrix, the publications fail to disclose or suggest a composition comprising a combination of *two separate matrices.* In fact, there is no mention or suggestion of a composition utilizing different control mechanisms.

*Id*. at 6-7 (WL00059319-320) (emphasis added).

CASE NO.:   12-60862-CIV-MIDDLEBROOKS/BRANNON

It is incontrovertible from the foregoing that  the inner lipophilic matrix must be separate and distinct from the outer hydrophilic matrix. Moreover, it is also clear that each of these separate and distinct matrices has its own release controlling mechanism, as evidenced by Applicants' comment that the cited references allegedly did not mention or suggest "a composition utilizing different control mechanisms."  And, there can be no debate that the "inner" lipophilic matrix must be contained, or dispersed, within the "outer" hydrophilic matrix. One only has to look at the claim language to establish this. *See* '720 patent at col. 6, ll. 18-19 (claim 1) ("an outer hydrophilic matrix wherein the lipophilic matrix is dispersed"). Astonishingly, Shire's proposed construction doesn't even require that the lipophilic matrix be "inner" to the hydrophilic matrix. As such, Shire's construction is completely at odds with the intrinsic evidence.

Nor does Shire's construction require active ingredient dispersed in the inner lipophilic matrix. As discussed, *supra,* the inner lipophilic matrix must have active ingredient dispersed homogeneously throughout. Again, this is consistent with the claim language and specification. For example, claim 1 provides "wherein the active ingredient is dispersed both in said [the] lipophilic matrix and in the hydrophilic matrix."  *Id.* at col. 6, ll. 16-17. And, the Examples expressly describe the active ingredient and lipophilic excipients as forming a "homogenous dispersion."  *See*, *e.g. id* at col. 4, ll. 9-12 (Example 1) ("770 g of 5-aminosalicylic acid are added in a kneader with 20 g of carnauba wax and 50 g of stearic acid with heating *until homogeneous dispersion*, then extruded into small granules while cold.) (emphasis added).

Yet again, only Watson's proposed construction is completely consistent with the intrinsic evidence.

### 5.        "outer hydrophilic matrix"

| Shire's Proposed Construction | Watson's Proposed Construction |
|---|---|
| "a matrix of at least one hydrophilic excipient, where the matrix is located outside the inner lipophilic matrix" | "a hydrophilic matrix that is separate and distinct from, and external to, an inner lipophilic matrix and that contains active ingredient dispersed homogeneously throughout" |

Watson's proposed construction for "outer hydrophilic matrix" follows naturally from its construction for "inner lipophilic matrix."  For the same reasons as above, the "outer hydrophilic matrix" must be "separate and distinct from, and external to" the "inner lipophilic matrix."  The

CASE NO.:  12-60862-CIV-MIDDLEBROOKS/BRANNON

claim language and specification also clearly establish that the outer hydrophilic matrix must have "active ingredient dispersed homogeneously throughout."  For example, claim 1 provides "wherein the active ingredient is dispersed both in said [the] lipophilic matrix and in the hydrophilic matrix."  *Id.* at col. 6, ll. 16-17.

And, as discussed above, this limitation requires that, *inter alia*, active is "dispersed homogeneously…within the hydrophilic matrix."  Shire's proposed construction suffers from the same deficiencies as its construction of "inner lipophilic matrix" – *i.e.*, it ignores the same statements in the prosecution history regarding "separate matrices."  This fact cannot be exemplified more clearly than by reference to Applicants' comments distinguishing the Akiyama prior art patent during prosecution. In response to the Non-Final Office Action, Applicants acknowledged that Akiyama disclosed a lipophilic matrix, however stated that Akiyama "fail to disclose or suggest the two matrices and the arrangement of the matrices as set forth in the claimed invention." *See* Non-Final Amendment at 3-4 (WL00059316-317).  Clearly, Applicants' comments were directed to the absence of a hydrophilic matrix in Akiyama and/or, at the least, to the fact that any hydrophilic matrix in Akiyama is not arranged as specified in the claims. Shire's proposed claim construction stands in stark contrast to the positions Applicants took in distinguishing Akiyama because it would literally cover the very structure it said was not present in Akiyama because Akiyama teaches mixing active-containing lipophilic matrix granules and a hydrophilic substance (ECG 505® ) and then compressing the mixture into a tablet.[7]  This is yet another example of Shire attempting to recapture claim scope that was surrendered during prosecution to obtain the '720 patent.

6.      **"consisting of substances selected from the group consisting of unsaturated and/or hydrogenated fatty acid, salts, esters or amides thereof, fatty acid mono-, di- or triglycerids, waxes, ceramides, and cholesterol derivatives with melting points below 90° C"**

| Shire's Proposed Construction | Watson's Proposed Construction |
| --- | --- |
| "containing one or more of the following substances: unsaturated fatty acid, salt of an unsaturated fatty | "containing at least two substances from the list below (excluding any other substance and also excluding |

---

[7] *See* Akiyama at col. 9, ll. 13-19 (Example 8), attached hereto as Exhibit 2.

28

CASE NO.:  12-60862-CIV-MIDDLEBROOKS/BRANNON

| Shire's Proposed Construction | Watson's Proposed Construction |
|---|---|
| acid, ester of an unsaturated fatty acid, amide of an unsaturated fatty acid, hydrogenated fatty acid, salt of a hydrogenated fatty acid, ester of a hydrogenated fatty acid, amide of a hydrogenated fatty acid, fatty acid monoglycerid, fatty acid diglycerid, fatty acid triglycerid, wax, ceramide, cholesterol derivative with melting points below 90° C" | any substance in the list below when used as a conventional lubricant) and each substance having a melting point lower than 90° C : unsaturated fatty acid, salt of an unsaturated fatty acid , ester of an unsaturated fatty acid , amide of an unsaturated fatty acid, hydrogenated fatty acid, salt of a hydrogenated fatty acid, ester of a hydrogenated fatty acid, amide of a hydrogenated fatty acid, fatty acid monoglycerid, fatty acid diglycerid, fatty acid triglycerid, wax, ceramide, cholesterol derivative" |

Watson's proposed construction of this phrase, which includes a Markush Group,[8] follows directly from the claim language itself, the specification, prosecution history, and established case law. The claim language – "consisting of *substances*" – clearly provides that this limitation requires more than one substance. This is also consistent with each of the working examples provided in the specification, in which *two* lipophilic excipients are used to form the lipophilic matrix granules. *See*, *e.g.*, '720 patent at col. 4, ll. 10-13 (Example 1) ("770 g of 5-aminosalicylic acid are added in a kneader with 20 g of *carnauba wax* and 50 g of *stearic acid* with heating until homogeneous dispersion, then extruded into small granules while cold.). Shire's construction would improperly allow the presence of a single lipophilic substance to satisfy this claim element.

---

[8] *See, e.g.*, *Abbott Labs. v. Baxter Pharm. Prods., Inc.*, 334 F.3d 1274, 1280 (Fed. Cir. 2003) ("A Markush group is a listing of specified alternatives of a group in a patent claim, typically expressed in the form: a member selected from the group consisting of A, B, and C....Moreover, [a] Markush group, incorporated in a claim, should be closed,  i.e. it must be characterized with the transition phrase 'consisting of,' rather than 'comprising' or 'including.'") (internal citations and quotations omitted).

CASE NO.:  12-60862-CIV-MIDDLEBROOKS/BRANNON

It is also well-established in the case law that "consisting of" is a "closed" term that prohibits the presence of any other materials besides those listed after this clause.[9] Accordingly, Shire's construction must be rejected to the extent that it encompasses a "lipophilic matrix" that includes the presence of other substances (such as hydrophilic excipients, e.g.) not expressly recited in the Markush Group.

To the extent that it is even properly included in the recited Markush Group, the prosecution history of the '720 patent makes clear that magnesium stearate, when used as a conventional lubricant to form a tablet core structure, is not included within the scope of the substances in the Markush Group. The Examiner rejected originally-filed claims 1-11 as obvious in view of Franco. *See* Non-Final Office Action at 3-4 (WL00059327-328). The Examiner noted that the '720 patent's specification disclosed magnesium stearate mixed with the lipophilic matrix. The Examiner therefore concluded that the "consisting of substances" language in claim 1 did not, by itself, adequately distinguish over Franco's structure, which included non-lipophilic substances in the lipophilic layer. *Id.*

Applicants responded to the Examiner's assertion by arguing that the magnesium stearate disclosed by Franco – used in Franco as a conventional lubricant to form the core of Franco's reservoir structure – did not create the claimed lipophilic matrix. *Id.* at 6. (WL00059319). Specifically, Applicants stated:

> As to the magnesium stearate, magnesium stearate is included in the core taught by FRANCO et al. However, the present invention does not require that magnesium stearate be used in the lipophilic matrix. The excipient may be used in the final tabletting step according to its *conventional lubricant properties*.

*Id.* (emphasis added). Applicants clearly understood that Franco disclosed a core formed by compressing active ingredient and magnesium stearate as a lubricant. Indeed, Franco discloses fourteen different examples that include lipophilic substances with the active ingredient in the core. *See* Franco at 16-38 (WL0059406-428 (Examples 2, 3, 7-17 (magnesium stearate),

---

[9] *See*, *e.g.*, *Norian Corp. v. Stryker Corp.*, 432 F.3d 1356, 1358 (Fed. Cir. 2005) (affirming district court's construction of "a solution consisting of water and a sodium phosphate" allowing only for a single sodium phosphate to be used, not a mixture).

CASE NO.:  12-60862-CIV-MIDDLEBROOKS/BRANNON

Examples 5-6 (stearic acid)). Notwithstanding these disclosures, the '720 Applicants continued to argue that Franco failed to disclose an inner lipophilic matrix. After-Final Amendment at 6-7 (WL00059300-301).

Therefore, the '720 Applicants disclaimed a tablet core containing active ingredient and, as the only lipophilic substance, magnesium stearate used according to its conventional lubricating properties. The '720 prosecution history thus puts the public on notice that the lipophilic matrix must have a substance other than a lipophilic excipient, such as magnesium stearate or stearic acid, when used as a "conventional lubricant."  Shire's proposed construction ignores the import of the clear statements made in the prosecution history in view of the settled case law. Shire's attempt to now recapture the very subject matter that it unambiguously disclaimed during prosecution subverts the public notice function of the intrinsic evidence. *Omega,* 334 F.3d at 1324. The public, including Watson, has a right to "rely on definitive statements made during prosecution."  *Spectrum Int'l v. Sterilite Corp.*, 164 F.3d 1372, 1378 (Fed. Cir. 1998). Only Watson's construction respects this fundamental tenet of claim construction.

### 7.       "selected from the group consisting of"

| Shire's Proposed Construction | Watson's Proposed Construction |
|---|---|
| "an exclusionary term specifying that an element contains only what is expressly set forth in a recited list, but does not exclude substances unrelated to, or outside of the context of said element" | "an exclusionary term specifying that the element contains only what is expressly set forth in a recited list" |

In attempting to overcome the Final Rejection based on Franco, Applicants added this term to the limitations for inner lipophilic matrix and outer hydrophilic matrix. *See* Non-Final Amendment at 2. It is well established case law that this phrase is an exclusionary term that only allows for the presence of the substances that are recited in the list following this term.[10]

---

[10] *See, e.g.*, *Abbott Labs. v. Andrx Pharms., Inc.*, 473 F.3d 1196, 1210 (Fed. Cir. 2007) ("A Markush group is a form of drafting a claim term that is approved by the PTO to serve a particular purpose when used in a claim-to limit the claim to a list of specified alternatives.").

CASE NO.:  12-60862-CIV-MIDDLEBROOKS/BRANNON

8.     **"melting points"**

| Shire's Proposed Construction | Watson's Proposed Construction |
| --- | --- |
| "the range of temperatures at which a solid begins to liquefy" | "the range of temperatures at which a solid begins to change from solid to liquid" |

Watson's proposed construction for "melting points" follows from the plain and ordinary meaning of this term. The respective constructions of the parties do not appear to differ widely. To the extent that Shire's proposed construction allows Shire to argue that "melting" means something other than its well-recognized meaning, *i.e.*, a substance's change from the solid state to the liquid state, it should be rejected. A claim term should ordinarily be given its plain and ordinary meaning. *Phillips v. AWH Corp.*, 415 F.3d 1303, 1312-13 (Fed. Cir. 2005).

**VI.   Conclusion**

For the reasons set forth above, Watson respectfully requests that the Court adopt Watson's proposed construction of the disputed claim terms.

32

CASE NO.:  12-60862-CIV-MIDDLEBROOKS/BRANNON

Dated: November 19, 2012                Respectfully submitted,

                                        s/ James K. Stronski
                                        James K. Stronski*
                                        Email: jstronski@crowell.com
                                        Bruce D. DeRenzi*
                                        Email: bderenzi@crowell.com
                                        Crowell & Moring LLP
                                        590 Madison Avenue, 20th Floor
                                        New York, NY 10022-2544
                                        Phone: 212.895.4217
                                        Fax: 212.223.4134

                                        Jennifer H. Burdman*
                                        jburdman@crowell.com
                                        Kristin M. Cooklin*
                                        kcooklin@crowell.com
                                        Craig P. Lytle*
                                        clytle@crowell.com
                                        Crowell & Moring LLP
                                        1001 Pennsylvania Ave. NW
                                        Washington, DC 20004
                                        Phone: 202.624.2500
                                        Fax: 202.628.5116

                                        *Counsel for Defendants*

                                        ***Admitted Pro Hac Vice***

                                        And

                                        s/ Janet T. Munn
                                        Janet T. Munn, Esq.
                                        Florida Bar No. 501281
                                        Email:  jmunn@rascoklock.com
                                        Rasco Klock, et al.
                                        283 Catalonia Avenue, Suite 200
                                        Coral Gables, FL  33134
                                        Telephone:  305.476.7101
                                        Telecopy:  305.476.7102

CASE NO.:  12-60862-CIV-MIDDLEBROOKS/BRANNON

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on November 19, 2012, I electronically filed the foregoing

document with the Clerk of the Court using CM/ECF.  I also certify that the foregoing document

is being served this day on all counsel of record identified below in the manner specified, either

via transmission of Notices of Electronic Filing generated by CM/ECF, or in some other

authorized manner for those counsel or parties who are not authorized to receive electronically

Notices of Electronic Filing.

**William Barry Blum, Esq.**
Email:  bblum@gjb-law.com
**Martin James Keane, Jr., Esq.**
Email:  mkeane@gjb-law.com
Genovese Joblove & Battista
100 S.E. 2nd Street, Suite 4400
Miami, FL  33131

**Eric C. Christu, Esq.**
Email:  echristu@shutts.com
**Joseph R. Englander, Esq.**
Email:  jenglander@shutts.com
Shutts & Bowen LLP
525 Okeechobee Boulevard, Suite 1100
West Palm Beach, FL  33401

**Edgar H. Haug, Esq.***
Email:  ehaug@flhlaw.com
**Elizabeth Murphy, Esq.***
Email:  emurphy@flhlaw.com
**Jason A. Lief, Esq.***
Email:  jlief@flhlaw.com
**Mark P. Walters, Esq.***
Email:  mwalters@flhlaw.com
**Andrew Wasson, Esq.***
Email:  awasson@flhlaw.com
Frommer Lawrence & Haug, LLP
745 Fifth Avenue
New York, NY  10151
*Counsel for Plaintiffs*

***Admitted Pro Hac Vice***

By: s/ Janet T. Munn
Janet T. Munn

34