IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA
FORT LAUDERDALE DIVISION

CASE NO.: 12-60862-CIV-MIDDLEBROOKS/BRANNON

SHIRE DEVELOPMENT LLC,
SHIRE PHARMACEUTICAL
DEVELOPMENT INC.,
COSMO TECHNOLOGIES LIMITED, and
GIULIANI INTERNATIONAL LIMITED,

      Plaintiffs,

                v.

WATSON PHARMACEUTICALS, INC.,
WATSON LABORATORIES, INC. – FLORIDA,
WATSON PHARMA, INC., and
WATSON LABORATORIES, INC.,
      Defendants.
_____/

**PLAINTIFFS' REBUTTAL CLAIM CONSTRUCTION BRIEF**

**TABLE OF CONTENTS**

I. INTRODUCTION ........................................................................................................... 4

II. ARGUMENT .................................................................................................................. 4

    A. The Court Should Reject Watson's Proposed Construction of the Disputed Term "Matrix" ............................................................................... 4

    B. The Court Should Reject Watson's Proposed Constructions of the Disputed Phrases "Inner Lipophilic Matrix" and "Outer Hydrophilic Matrix" ..................................................................................... 6

    C. The Court Should Reject Watson's Proposed Construction of the Disputed Term "Dispersed" ......................................................................... 8

    D. The Court Should Reject Watson's Proposed Construction of the Disputed Phrase "Wherein the Active Ingredient Is Dispersed Both in [Said] the Lipophilic Matrix and in the Hydrophilic Matrix" ..................... 12

    E. The Court Should Reject Watson's Proposed Construction of the Disputed Phrase "Consisting of Substances Selected From the Group Consisting of Unsaturated and/or Hydrogenated Fatty Acid, Salts, Esters of Amides Thereof, Fatty Acid Mono-, Di- or Triglyceris, Waxes, Ceramides, and Cholesterol Derivatives with Melting Points Below 90° C" .................................................................... 14

    F. The Court Should Reject Watson's Proposed Construction of the Disputed Phrase "Melting Point" ............................................................. 15

    G. Federal Circuit Precedent Compels Construing "Selected from the Group Consisting of" As An Exclusionary Term Specifying That An Element Contains Only What Is Expressly Set Forth In a Recited List, But Does Not Exclude Substances Unrelated To, Or Outside of the Context of Said Element ...................................................... 16

III. CONCLUSION ............................................................................................................ 17

# **TABLE OF AUTHORITIES**

**Cases**

*Bayer AG v. Elan Pharm. Research Corp.*, 212 F.3d 1241(Fed. Cir. 2000) ................................15

*Conoco Inc. v. Energy & Envtl. Int'l, L.C.*, 460 F.3d 1349 (Fed. Cir. 2006) ..............................16

*Curtiss-Wright Flow Control Corp. v. Velan, Inc.*, 438 F.3d 1374 (Fed. Cir. 2006) ..................13

*Ecolab, Inc. v. Envirochem, Inc.*, 264 F.3d 1358 (Fed. Cir. 2001) ................................................7

*In re Omeprazole Patent Litig.*, 84 Fed. Appx. 76 (Fed. Cir. 2003) ............................................14

*Mannesmann Demag Corp. v. Engineered Metal Prods. Co.*, 793 F.2d 1279 (Fed. Cir. 1986) ........................................................................................................................16

*Norian Corp. v. Stryker Corp.*, 363 F.3d 1321 (Fed. Cir. 2004) ..................................................16

*Omega Eng'g, Inc. v. Raytek Corp.*, 334 F.3d 1314 (Fed. Cir. 2003) .........................................15

*Phillips v. AWH Corp.*, 415 F.3d 1303 (Fed. Cir. 2005) ....................................................... 12, 14

*Seachange Int'l, Inc. v. C–COR, Inc.*, 413 F.3d 1361 (Fed. Cir. 2005) .......................................13

*SRI Int'l v. Matsushita Elec. Corp. of Am.*, 775 F.2d 1107 (Fed. Cir. 1985) ...............................11

*Teleflex, Inc. v. Ficosa North Am. Corp.*, 299 F.3d 1313 (Fed. Cir. 2002) ............................5, 12

*Toro Co. v. White Consol. Indus., Inc.*, 266 F.3d 1367 (Fed. Cir. 2001) .......................................5

*Versa Corp. v. Ag-Bag Int'l Ltd.*, 392 F.3d 1325 (Fed. Cir. 2004) ..............................................14

*Vitronics Corp. v. Conceptric, Inc.*, 90 F.3d 1576 (Fed. Cir. 1996) ............................................12

I.  Introduction

Plaintiffs Shire Development LLC, Shire Pharmaceutical Development Inc., Cosmo Technologies Limited, and Giuliani International Limited (collectively "Plaintiffs") respectfully submit this rebuttal claim construction brief for U.S. Patent No. 6,773,720 ("the '720 patent," Decl. Ex. 1).[1]  The Court should reject the proposed constructions presented by defendants Watson Pharmaceuticals, Inc., Watson Laboratories, Inc. – Florida, Watson Pharma, Inc., and Watson Laboratories, Inc. (collectively, "Defendants") in Defendants' Opening Claim Construction Brief [DE 90] ("Defendants' Opening Brief").  As already demonstrated in Plaintiffs' Opening Claim Construction Brief [DE 91] ("Plaintiffs' Opening Brief"), Defendants' proposed claim constructions suffer from a wide variety of deficiencies: they ignore the plain language of the claims; they attempt to add limitations not found in the claims; they are founded on incomplete characterizations of the specification and file history; and they otherwise find little or no support in the intrinsic and extrinsic record.  Consequently, Defendants' proposed claim constructions depart substantially from Federal Circuit precedent.  On the other hand, Plaintiffs' proposed claim constructions provide a comprehensive and well-grounded account of the claims taken in the context of the intrinsic record, and when helpful, the extrinsic record.

II.  Argument

   A.  The Court Should Reject Watson's Proposed Construction of the Disputed Term "Matrix"

The Court should reject Defendants' construction of the term "matrix" as "a pharmaceutical matrix, consisting of active ingredient dispersed homogeneously throughout, that controls or delays release of the active ingredient."[2]  As set forth in Plaintiffs' Opening Brief, Defendants' construction ignores the plain language of the claim and improperly imports

---

[1] "Decl. Ex. __" refers to Exhibits attached to the Declaration of Andrew Wasson in Support of Plaintiffs' Rebuttal Claim Construction Brief, attached hereto as Exhibit A.  The '720 patent issued from U.S. Patent Application No. 10/009,491 ("the '491 Application").

[2] Defendants' organization of claim terms in Defendants' Opening Brief is haphazard.  They ask the Court to first look at "dispersed" and "wherein the active ingredient is dispersed both in [said] lipophilic matrix and in the hydrophilic matrix" to only then consider, "matrix," "inner lipophilic matrix" and "outer hydrophilic matrix."  Plaintiffs propose that the Court first construe the basic structural elements of the claim (e.g. "matrix," "inner lipophilic matrix" and "outer hydrophilic matrix") and then proceed to define phrases containing such terms.

limitations from the specification and prosecution history of the '720 patent. Additionally, Defendants' proposed construction is unhelpful on a fundamental level because it fails to define "matrix" beyond "a pharmaceutical matrix."

Even though Defendants acknowledge that the term "matrix" is "best understood with reference to the disclosure of the '720 patent and its prosecution history,"[3] Defendants fail to reference one passage in the specification that squarely defines the term "matrix":

> The compression of the mixture of lipophilic matrix, hydrogel-forming compounds and, optionally, active ingredient non inglobated in the lipophilic matrix, <u>yields a macroscopically homogeneous structure in all its volume, namely a matrix</u> containing a dispersion of the lipophilic granules in a hydrophilic matrix.

Decl. Ex. 1, '720 patent col.3 ll.40-45 (emphasis added). Ignoring this purely structural description, Defendants seek to rewrite the claims by incorporating a number of extraneous limitations, such as a functional limitation of controlling or delaying release.[4] Federal Circuit precedent does not permit this type of revision. *See Teleflex, Inc. v. Ficosa North Am. Corp.*, 299 F.3d 1313, 1326 (Fed. Cir. 2002) ("limitations from the specification are not to be read into the claims"); *see also Toro Co. v. White Consol. Indus., Inc.*, 266 F.3d 1367, 1371 (Fed. Cir. 2001) ("This court's claim construction, however, did not and could not import into the claim a function from the specification, particularly when the claim recites only purely structural limitations."). Consequently, the Court should reject Defendants' proposed construction.

In addition, Defendants' proposed construction conflates the structure of a matrix with its function. The specification's mere "reference to matrices in the context of controlling the release of active ingredient" is simply not enough. *See* Defendants' Opening Brief at 24. None of the passages cited by Defendants suggest that "matrix" should be defined to control or delay release of active ingredient. Further, Defendants' characterization of the file history is logically flawed. *See id.* at 25. Defendants argue that the applicants "distinguished" the claims over the

---

[3] Defendants' Opening Brief at 24.

[4] Defendants' proposed construction also seeks to incorporate a limitation requiring "active ingredient dispersed homogeneously throughout." As demonstrated in Plaintiffs' Opening Brief, this proposed limitation is incorrect because: (1) the claims already require active ingredient dispersed in the lipophilic and hydrophilic matrices, and (2) the intrinsic record distinguishes active ingredient from a matrix structure in which it is dispersed. Plaintiffs' Opening Brief at 7.

5

prior art in a way that requires a construction of "matrix" that controls or delays release. *Id.* The Defendants admit at the same time, however, that the applicants stated that matrix and reservoir dosage forms <u>both</u> control release. Therefore any "distinction" by the applicants in this regard could not have been on a functional basis.

The Court should adopt Plaintiffs' proposed construction of "matrix": "a macroscopically homogeneous structure in all its volume." The specification directly supports Plaintiffs' proposed construction; in fact, Plaintiffs' construction is drawn verbatim from the passage quoted above. *See e.g.* Decl. Ex. 1, '720 patent, col.3 ll.40-45; *see also id.* at col.1 ll.62-65. The file history also supports Plaintiffs' proposed construction because each of the references submitted by the applicants to illustrate the structural difference between "matrix" and "reservoir" dosage forms consistently characterize the former as macroscopically homogeneous structures. Therefore, the Court should adopt Plaintiffs' proposed construction because it stays true to the language of the claims, and it is directly supported by the intrinsic record.

> **B.    The Court Should Reject Watson's Proposed Constructions of the Disputed Phrases "Inner Lipophilic Matrix" and "Outer Hydrophilic Matrix"**

The Court should reject Defendants' proposed constructions of the phrases "inner lipophilic matrix" and "outer hydrophilic matrix." Defendants' proposed constructions ignore the plain language of the claims and improperly import limitations from the specification and prosecution history of the '720 patent. Defendants construe "inner lipophilic matrix" as "a lipophilic matrix that contains active ingredient dispersed homogeneously within that is separate and distinct from, and contained within, an outer hydrophilic matrix" and an "outer hydrophilic matrix" as "a hydrophilic matrix that is separate and distinct from, and external to, an inner lipophilic matrix and that contains active ingredient dispersed homogeneously throughout." As described above and in the Plaintiffs' Opening Brief, each construction is incorrect because it improperly requires: (1) "separate and distinct" matrices;[5] (2) "controlled" or "delayed" release of active ingredient;[6] (3) active ingredient dispersed throughout;[7] and (4) "inner lipophilic matrix" as "contained within" an outer hydrophilic matrix.[8]

---

[5] *See* Plaintiffs' Opening Brief at 8-10 (for Plaintiffs' argument that "inner lipophilic matrix" and "outer hydrophilic matrix" should not be defined as "separate and distinct").

[6] *See supra* at 4-6 (for Plaintiffs' argument that "matrix" should not be construed to require "controlled" or "delayed release"); *see also* Plaintiffs' Opening Brief at 4-7.

6

None of the passages cited by Defendants suggest that the "inner lipophilic matrix" must be "separate and distinct" from the "outer hydrophilic matrix" or *vice versa*. Claim 1 already requires both an "inner lipophilic matrix" and an "outer hydrophilic matrix." Indeed, the phrase "separate and distinct" is found nowhere in the claims, the specification, or the file history. The Court should reject Defendants' proposed constructions on this basis alone. *See Ecolab, Inc. v. Envirochem, Inc.*, 264 F.3d 1358, 1366 (Fed. Cir. 2001) (affirming district court's refusal to import limitation with "no basis in the intrinsic record").

What is more, the passages cited by Defendants merely demonstrate that the claims require both an inner lipophilic matrix and an outer hydrophilic matrix. For example, the first passage of the specification cited by the Defendants does nothing more than refer to "a) an inner lipophilic matrix" and "b) an outer hydrophilic matrix." Decl. Ex. 1, '720 patent, col.2 ll.36-44. In like manner, the applicants' statements about U.S. Patent No. 5,593,690 to Akiyama et al. only indicate that the claims require an inner lipophilic matrix and an outer hydrophilic matrix. Decl. Ex. 2, '491 Application, Amendment and Remarks at 3 (Apr. 29, 2003). In a similar way, the applicants' statements that U.S. Patent No. 5,851,555 to Sanghvi et al. ("Sanghvi") does not disclose two "separate" matrices at most implies that the claims require both an inner lipophilic matrix and an outer hydrophilic matrix. *Id.* at 6-7. Thus, Defendants provide no support for the proposed introduction of the extraneous limitation "separate and distinct" into the disputed claim terms.

By contrast, Plaintiffs' proposed constructions of "inner lipophilic matrix" and "outer hydrophilic matrix" are correct because they do not import limitations from the specification or the file history of the '720 patent. Rather, Plaintiffs' proposed constructions focus on the clear language of the claim. For example, Plaintiffs' constructions recognize that the adjectives

---

[7] *See* Plaintiffs' Opening Brief at 7 (for Plaintiffs' argument that "matrix" should not be construed to require active ingredient dispersed throughout).

[8] *See* Plaintiffs' Opening Brief at 8 (for Plaintiffs' argument that "inner lipophilic matrix" should not be construed to mean "contained within the outer hydrophilic matrix"). Defendants misleadingly state that "Shire's proposed construction [of inner lipophilic matrix] doesn't even require that the lipophilic matrix be 'inner' to the hydrophilic matrix." Defendants' Opening Brief at 27. Shire's proposed construction certainly allows for the lipophilic matrix to be "inner" to the hydrophilic matrix, but it additionally captures that the lipophilic matrix may be "inner" to other excipients as well. For instance, Examples 1-4 in the specification disclose granules containing lipophilic substance mixed with hydrophilic and other excipients. Decl. Ex. 1, '720 patent, at col.4 l.8 - col.5 l.45.

"inner"/"outer" and "lipophilic"/"hydrophilic" all modify the noun, "matrix." Accordingly, Plaintiffs construe "inner lipophilic matrix" to mean "a matrix including at least one lipophilic excipient, where the matrix is located within one or more other substances" and "outer hydrophilic matrix" to mean, "a matrix of least one hydrophilic excipient, where the matrix is located outside the inner lipophilic matrix." What is more, Plaintiffs' proposed constructions comport with the specification and file history of the '720 patent, in which the applicants describe, in structural terms, the matrix dosage form consistent with and envisioned by Plaintiffs' constructions.

      C.      **The Court Should Reject Watson's Proposed Construction of the Disputed Term "Dispersed"**

The Court should reject Defendants' proposed construction of the term "dispersed" as "homogeneously mixed or combined." Defendants entirely fail to demonstrate why the cited portions of the file history or specification require Defendants' proposed construction over Plaintiffs' proposed construction. The parties already agree that "dispersed" requires a "mixture." The only difference between the parties' constructions is the type of mixture. Plaintiffs submit that the term "dispersed" contemplates mixture sufficient to incorporate one substance with another, while Defendants propose that the term "dispersed" requires a "homogeneous" mixture. None of the sources cited by Defendants, however, favor their proposed construction.

The specification does not support Defendants' proposed construction. For example, the passages cited by Defendants that compare matrix and reservoir dosage forms provide no insight to the meaning of "dispersed." Defendants have not shown that anything in these passages requires that the word "homogeneous" must be included in the construction of "dispersed." Some of the passages relied on by Defendants merely use the word "dispersed" without any further elaboration. Decl. 1, '720 patent, col.2 ll.36-44; col.2 ll.50-59. One passage refers to a "homogeneous dispersion," but as described in Plaintiffs' Opening Brief, the use of the phrase "homogeneous dispersion" actually suggests that "dispersed" should <u>not</u> be construed as homogeneous. *Id.* at col.3 ll.14-17. In the phrase "homogeneous dispersion," the word "homogeneous" is an adjective that modifies "dispersion." Thus, a homogeneous dispersion is one <u>type</u> of dispersion, but it is not a defining characteristic of all dispersions.

8

The portions of the file history cited in the Defendants' Opening Brief do not support Defendants' contention that "dispersed" requires a "homogeneous" mixture. Tellingly, none of the passages from the file history cited by Defendants use the word "homogeneous." Nevertheless, Defendants argue that the applicants "surrendered any right to claim scope in which a lipophilic matrix encompasses a structure in which active ingredient is merely coated with a lipophilic layer" because the applicants substituted "dispersed" for "partly inglobated" in the claims. Defendants' Opening Brief at 19. Defendants' argument relies on two assumptions: (1) that the Examiner allegedly believed that the "partly inglobated" language was not sufficient to distinguish the claims from GB 2 245 492 ("Franco"), and (2) the claims containing the "partly inglobated" language covered the "coated core" structure of Franco, but the amended claims did not. *Id.* Neither assumption is warranted. In fact, Defendants' lengthy[9] exposition of the file history misconstrues the Franco reference, mischaracterizes the remarks of the Examiner and the applicants, and ignores statements by the applicants directly contrary to Defendants' argument.

Responding to the Examiner's rejection that Franco rendered the pending claims obvious under 35 U.S.C. § 103, the applicants stated that Franco disclosed "an inner core in the form of a tablet with an outer lipophilic coating," but that in the "the present invention, the active ingredient is dispersed in a lipophilic matrix, not in an isolated core." Decl. Ex. 2, '491 Application, Office Action (April 29, 2003) at 6. The pending claims recited, *inter alia*, "an inner lipophilic matrix…in which the active ingredient is at least partly inglobated." *Id.* at 1. The Examiner again rejected the claims over Franco for obviousness in a Final Rejection. The Examiner acknowledged the applicants' attempt to distinguish the claims over Franco by arguing that the claimed invention contemplated "active ingredient is dispersed in a lipophilic matrix," but the Examiner also noted that this feature was "not recited in the rejected claims." Decl. Ex. 2, '491 Application, Final Office Action at 3-4 (June 9, 2003). Following the Final Rejection, the applicants amended claim 1 to substitute "dispersed" for "partly inglobated." Decl. Ex. 2,

---

[9] Defendants spend roughly twelve pages of their thirty-two page Opening Brief summarizing the '720 patent file history and specification. Plaintiffs note that the Local Rules provide a page limit of twenty pages, with respect to any motion and incorporated memorandum of law, exclusive of title pages, signature pages, certificates of good faith conferences, and certificates of service. *See* Local Rule 7.1(c)(2). Plaintiffs did not provide in their Opening Brief a summary of the specification, file history, or a side-by-side comparison of claim terms in order to abide by this limit.

'491 Application, Amendment After Final Rejection ("Amendment") at 2 (October 9, 2003). In the remarks accompanying the amendment, the applicants maintained that both versions of the claims were distinguishable from Franco:

> The outstanding Official Action also contends that the recitation that an "active ingredient is a [sic] least partly inglobated" does not limit the claim to an "active ingredient dispersed in a lipophilic matrix". However, <u>applicants note that FRANCO et al. do not teach a composition wherein "an active ingredient is at least partly inglobated" or "dispersed" in a lipophilic matrix</u>. Nevertheless, in the interest of advancing prosecution, applicants note that claim 1 recites that the active ingredient is dispersed in the lipophilic matrix. It is believed that Franco et al. fail to disclose or suggest the claimed invention.

Decl. Ex. 2, '491 Application, Amendment at 9-10 (October 9, 2003) (emphasis added) (not quoted in Defendants' Opening Brief).

First, Defendants incorrectly assert that the Examiner believed that "partly inglobated" was insufficient to distinguish the claims from Franco on the merits. The Final Rejection contains no such statement. Rather, the Examiner's comments are narrowly focused on a formal issue: the perceived mismatch between the language of the pending claims ("partly inglobated") and the language used by the applicants ("dispersed"). It is possible that the Examiner may not have issued a Final Rejection if the applicants had argued in the first instance that Franco did not contain active ingredient "partly inglobated" in the lipophilic matrix. Thus, the Defendants incorrectly assume that the Examiner thought that the "partly inglobated" claim language was insufficient to overcome Franco.

Second, Defendants provide no support for their contention that the "partly inglobated" claim language "covered" the structure of Franco, but the amended claims did not. In fact, Defendants ignore express statements by the applicants to the contrary. As quoted above, along with the amendment substituting "dispersed" for "partly inglobated," the applicants stated: "FRANCO et al. do not teach a composition wherein 'an active ingredient is at least partly inglobated' or 'dispersed' in a lipophilic matrix." Decl. Ex. 2, '491 Application, Amendment at 10 (October 9, 2003). In other words, the applicants made clear that they thought that the claims were distinguishable over Franco <u>regardless</u> of the claim language ("partly inglobated" versus "dispersed")—and that neither iteration covered Franco. Therefore, Defendants incorrectly state

that the "partly inglobated" claim would cover the structure of Franco, but the amended claims would not.

Consequently, Defendants' conclusion that the applicants surrendered claim scope with respect to Plaintiffs' proposed construction of "dispersed" fails. As shown above, Defendants cite no evidence to support their argument that the Examiner believed that "partly inglobated" was insufficient to distinguish the claims from Franco on the merits. Rather, it is clear that the Examiner merely thought that the claim language should align with the wording of the applicants' argument. Additionally, any amendment made by the applicants had no effect on claim scope vis-à-vis Franco. That much is clear from the applicants' explicit statement arguing that neither iteration of the claims covered Franco. Therefore, Defendants' conclusion (that the applicants somehow surrendered the claim scope encompassed by Plaintiffs proposed construction) should fail.

Defendants' recent attempt to shift the argument from whether dispersed means "sufficiently mixed to incorporate one substance with another" (Plaintiffs' construction) or "homogeneously mixed or combined" (Defendants' construction) to whether each construction would "encompass[] a structure in which active ingredient is merely coated with a lipophilic layer"[10] departs significantly from their previous position.[11] Defendants' shifting arguments belie a clear attempt to inject argument about the accused product into the claim construction analysis. *See SRI Int'l v. Matsushita Elec. Corp. of Am.*, 775 F.2d 1107, 1118 (Fed. Cir. 1985) ("It is only *after* the claims have been construed *without reference to the accused device* that the claims, as so construed, are applied to the accused device to determine infringement.") (emphasis in original). Even assuming, *arguendo*, Defendants are now entitled to present additional claim construction positions beyond those originally set forth, Defendants nevertheless provide no support for their contention that Plaintiffs' proposed construction ("sufficiently mixed to incorporate one substance with another") would encompass a reservoir dosage form.

---

[10] Defendants' Opening Brief at 19.

[11] Defendants only cite the October 9, 2003 amendment as support for their construction of "dispersed" in the Joint Claim Construction Statement. Joint Claim Construction Statement, [DE 68]. In addition, Defendants' rebuttal to Plaintiffs' proposed construction does not argue that Plaintiffs' claim construction is inappropriate based on any amendment of the claims. *Id.* at 9-10.

> **D.     The Court Should Reject Watson's Proposed Construction of the Disputed Phrase "Wherein the Active Ingredient Is Dispersed Both in [Said] the Lipophilic Matrix and in the Hydrophilic Matrix"**

Defendants ask the Court to construe the phrase "wherein the active ingredient is dispersed both in [said] the lipophilic matrix and in the hydrophilic matrix" to mean "active ingredient is in direct contact with and dispersed homogeneously within both the lipophilic matrix and within the hydrophilic matrix."  The Court should reject Defendants' construction because it attempts to import a limitation from the specification into the claims, it would exclude each and every Example of the '720 patent, and it is based on a misinterpretation of the file history.

Defendants' proposed construction impermissibly imports a limitation into the claims. *See Teleflex, Inc.*, 299 F.3d at 1326 (Fed. Cir. 2002) ("limitations from the specification are not to be read into the claims").  And again, Defendants attempt to effectively shoehorn a new construction requiring "free" active ingredient "additionally and separately dispersed" in each matrix.  Defendants' Opening Brief at 21.  None of the Examples of the '720 patent describe "free" active ingredient "additionally and separately dispersed" within the hydrophilic excipients as Defendants appear to contemplate.  A construction that disclaims a preferred embodiment is rarely, if ever, correct. *Vitronics Corp. v. Conceptric, Inc.*, 90 F.3d 1576, 1583 (Fed. Cir. 1996) (a construction that would not cover preferred embodiments is "rarely, if ever, correct").  Therefore, even if "in direct contact" implies "additionally and separately dispersed," Defendants' construction fails because it excludes each Example from the '720 patent.  By contrast, Plaintiffs' construction properly encompasses each Example of the '720 patent (active ingredient is dispersed within the compressed lipophilic granules that form the inner lipophilic matrix as well as with the hydrophilic excipients mixed throughout the tablet).

The doctrine of claim differentiation does not support Defendants' proposed construction.  Under the doctrine of claim differentiation, "the presence of a <u>dependent</u> claim that adds a particular limitation gives rise to a presumption that the limitation in question is not present in the <u>independent</u> claim." *Phillips v. AWH Corp.*, 415 F.3d 1303, 1315 (Fed. Cir. 2005) (emphasis added).  Defendants attempt to divine meaning about the disputed phrase by comparison of the verbiage of two originally-filed <u>dependent</u> claims.  The Federal Circuit has held, however, that the comparison of two dependent claims may not provide meaningful information in this regard, however, because patent drafters are permitted to use multiple linguistic variations to claim an

12

invention in dependent claims. *See Curtiss-Wright Flow Control Corp. v. Velan, Inc.*, 438 F.3d 1374, 1380-81 (Fed. Cir. 2006) (recognizing that "[c]laim drafters can also use different terms to define the exact same subject matter"). Moreover, a presumption created by the doctrine of claim differentiation "will be overcome by a contrary construction dictated by the written description or prosecution history." *Seachange Int'l, Inc. v. C–COR, Inc.*, 413 F.3d 1361, 1369 (Fed. Cir. 2005). The fact that Defendants' proposed construction excludes each and every Example of the '720 patent overcomes any presumption ostensibly gleaned from the language of dependent claims 8 and 9. Consequently, Defendants have not established that the doctrine of claim differentiation advances their position.

  Defendants' arguments that the applicants surrendered claim scope by amending the claims to include the disputed language fail as well. Defendants do not and cannot point to any statement in the file history demonstrating that the applicants "gave up" all pharmaceutical compositions that do not "contain free mesalamine additionally dispersed in a hydrophilic matrix and therefore 'in direct contact with' the hydrophilic matrix." *See* Defendants' Opening Brief at 23-24. In fact, the Examiner's statement in the reasons for allowance confirms that the amendment to include the disputed claim language was made for reasons entirely unrelated to Defendants' proposed construction. The Examiner stated, "[t]he reason for allowance of the claims is the inclusion of active ingredient is dispersed in both, the lipophilic and hydrophilic matrices. <u>The cited reference [Franco] teaches the active ingredient being within the core, not dispersed in the matrices</u>." Decl. Ex. 2, '491 Application, Notice of Allowability at 3 (emphasis added). Defendants do not appreciate that the "core" in Franco is a "reservoir" of active ingredient coated by a lipophilic layer. In other words, the applicants did not amend the claims to overcome prior art that had active ingredient dispersed within a lipophilic matrix, but not dispersed in an outer hydrophilic matrix. The structure described by Franco is not a matrix at all because it is not macroscopically homogeneous in all of its volume. Plaintiffs' proposed construction is consistent with the file history because unlike Franco (which is not a matrix dosage form), the claims were amended to require active ingredient incorporated throughout both the lipophilic matrix and the hydrophilic matrix.

  Therefore, the Court should adopt Plaintiffs' proposed construction of "wherein the active ingredient is dispersed both in [said] lipophilic matrix and in the hydrophilic matrix." Plaintiffs' construction observes that the majority of the terms in this phrase are dealt with

elsewhere in the claim construction briefing: either they are disputed by the parties (like "matrix" or "dispersed"), or they have settled meaning (like "lipophilic" and "hydrophilic"). The terms that remain ("both," "in," "and") have commonly understood meanings. Plaintiffs' approach focuses on the relationships of the terms like "matrix," "lipophilic," "hydrophilic" and "dispersed" as mediated by the commonly understood connectors. The result is a construction that adheres to the intrinsic record and does not impose extraneous limitations into the claims.

> **E.   The Court Should Reject Watson's Proposed Construction of the Disputed Phrase "Consisting of Substances Selected From the Group Consisting of Unsaturated and/or Hydrogenated Fatty Acid, Salts, Esters of Amides Thereof, Fatty Acid Mono-, Di- or Triglycerids, Waxes, Ceramides, and Cholesterol Derivatives with Melting Points Below 90° C"**

The Court should reject Defendants' proposed construction of this phrase because it requires "at least two substances" and "exclud[es] any substance in the list below when used as a conventional lubricant." Defendants' construction is at odds with the specification of the '720 patent and improperly disclaims "conventional lubricants" from the recited list.

Defendants' construction requiring "at least two substances" is inappropriate. As described in the Plaintiffs' Opening Brief: (1) "substances" refers to the several lipophilic substances that follow in the recited list (and therefore refers to each individually), (2) the specification of the '720 patent affirmatively states that <u>one</u> or more lipophilic substances can form the lipophilic matrix, and (3) Federal Circuit precedent recognizes that, "in context, the plural can describe a universe ranging from one to some higher number."[12] *Versa Corp. v. Ag-Bag Int'l Ltd.*, 392 F.3d 1325, 1330 (Fed. Cir. 2004); *see also In re Omeprazole Patent Litig.*, 84 Fed. Appx. 76, 80 (Fed. Cir. 2003) (construing "materials," a "plural term does not necessarily require multiple compositions" when it "reflects an attempt to achieve grammatical consistency"). In addition, Defendants assign undue import to the fact that the Examples of the '720 patent describe mixtures of two lipophilic substances. "[A]lthough the specification often describes very specific embodiments of the invention, we have repeatedly warned against confining the claims to those embodiments." *Phillips*, 415 F.3d at 1323. The Federal Circuit's warning is particularly applicable in this instance where there is nothing in the intrinsic record that attaches any significance to using more than one lipophilic substance.

---

[12] *See* Plaintiffs' Opening Brief at 14-15.

Defendants also incorrectly attempt to graft a broad, categorical exclusion of subject matter onto the claims, which are otherwise silent on the issue, based on argument by the applicants during prosecution. The Federal Circuit has consistently held, however, that courts cannot limit claim language based on an argument in the prosecution history unless "the alleged disavowing actions or statements made during prosecution [are] both clear and unmistakable." *Omega Eng'g, Inc. v. Raytek Corp.*, 334 F.3d 1314, 1325-26 (Fed. Cir. 2003). Further, courts conduct an analysis of "disavowal" or "disclaimer" in the context of the file history in its entirety. *Bayer AG v. Elan Pharm. Research Corp.*, 212 F.3d 1241, 1252 (Fed. Cir. 2000) (disclaimer must be assessed examining the prosecution history as a whole).

As set forth in Plaintiffs' Opening Brief, taken in the context of the entire prosecution history, the applicants signaled that conventional lubricants, such as magnesium stearate and stearic acid, fell within the scope of substances listed in part (a) of claim 1. Prosecution of the patent application did not end with the statement relied upon by the Defendants. The Examiner continued to reject the claims and in the Final Rejection stated, "Applicant argues that the present invention does not require the use of surfactant. However, the term 'substances' recites [sic] in applicant's generic claim permits the present [sic] of surfactant." Decl. Ex. 2, '491 Application, Final Office Action (Jun. 9, 2003) at 4. Like the Examiner, a person reading the file history would have easily recognized that the claims still covered all conventional lubricants. To make it even clearer, after the Final Rejection, applicants amended the claims to specifically encompass hydrogenated fatty acids and salts thereof (such as stearic acid and magnesium stearate). Decl. Ex. 2, '491 Application, Amendment and Remarks at 2 (Oct. 9, 2003). Defendants do not appreciate that the applicants distinguished Franco on the basis that Franco disclosed a reservoir dosage form, as opposed to a matrix dosage form (which is macroscopically homogeneous throughout its entire volume). *Id*. at 9. Therefore, Defendants have not demonstrated that the applicants clearly and mistakably surrendered conventional lubricants like magnesium stearate and stearic acid.

  F.  **The Court Should Reject Watson's Proposed Construction of the Disputed Phrase "Melting Point"**

The Court should reject Defendants' proposed construction of "melting point." Defendants acknowledge that the "respective constructions of the parties do not appear to differ widely." Defendants' Opening Brief at 32. In contrast to Defendants' proposed construction,

15

Defendants do not justify why their proposed construction reflects the well-recognized meaning of "melting point." Plaintiffs' construction ("begins to liquefy") is supported by the intrinsic and extrinsic record, and is taken from a dictionary definition to which Defendants largely agree. *See* Plaintiffs' Opening Brief at 13-14. The Court should therefore reject Defendants' proposed construction and construe "melting point" as "the range of temperatures at which a solid begins to liquefy."

### G. Federal Circuit Precedent Compels Construing "Selected from the Group Consisting of" As An Exclusionary Term Specifying That An Element Contains Only What Is Expressly Set Forth In a Recited List, But Does Not Exclude Substances Unrelated To, Or Outside of the Context of Said Element

The Court should reject Defendants' construction of "selected from the group consisting of" as "an exclusionary term specifying that the element contains only what is expressly set forth in a recited list." This construction reflects an incomplete understanding of Federal Circuit precedent.

Plaintiffs agree that it is "well-established case law" that this phrase is an exclusionary term. It is also well-established, however, that the exclusion "is not absolute." *Conoco Inc. v. Energy & Envtl. Int'l, L.C.*, 460 F.3d 1349, 1360 (Fed. Cir. 2006). "[I]t does not limit aspects unrelated to the invention." *Norian Corp. v. Stryker Corp.*, 363 F.3d 1321, 1331 (Fed. Cir. 2004). Specifically, the phrase "selected from the group consisting of" limits only the elements set forth in each clause in which it appears. *See Mannesmann Demag Corp. v. Engineered Metal Prods. Co.*, 793 F.2d 1279, 1282 (Fed. Cir. 1986) ("The district court correctly observed that the phrase 'consisting of' appears in clause (a), not the preamble of the claim, and thus limits only the element set forth in clause (a)."). In the '720 patent, therefore, the phrase only limits the lipophilic or hydrophilic components, and does not exclude other substances from the claimed composition.

In accordance with Federal Circuit precedent, the Court should reject Defendants' incomplete construction and construe "selected from the group consisting of" as an exclusionary term specifying that an element contains only what is expressly set forth in a recited list but does not exclude substances unrelated to, or outside of the context of the element.

### III. Conclusion

For at least the reasons set forth above, the Court should reject Defendants' proposed constructions for the disputed claim terms of the '720 patent and the Court should adopt Plaintiffs' proposed constructions.

Dated this 3rd day of December, 2012.    Respectfully submitted,

                                                  **s./ Martin J. Keane**

W. Barry Blum / bblum@gjb-law.com
Florida Bar No.: 379301
Martin J. Keane / mkeane@gjb-law.com
Florida Bar No.: 524239
GENOVESE JOBLOVE & BATTISTA, P.A.
4400 Miami Tower
100 Southeast Second Street
Miami, Florida 33131
T: (305) 349-2300 / F: (305) 349-2310

Eric C. Christu / echristu@shutts.com
Florida Bar No.: 434647
Joseph R. Englander / jenglander@shutts.com
Florida Bar No.: 935565
SHUTTS & BOWEN LLP
525 Okeechobee Boulevard - Suite 1100
West Palm Beach, Florida 33401
T: (561)835-8500 / F: (561) 650-8530

Edgar H. Haug (*Pro Hac Vice*)
ehaug@flhlaw.com
Mark P. Walters (*Pro Hac Vice*)
mwalters@flhlaw.com
Andrew Wasson (*Pro Hac Vice*)
awasson@flhlaw.com
FROMMER LAWRENCE & HAUG LLP
745 Fifth Avenue
New York, New York 10151
T: (212) 588-0888 / F: (212) 588-0500
*Attorneys for Plaintiffs*

## **CERTIFICATE OF SERVICE**

   I hereby certify that on December 3, 2012, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record identified on the attached Service List in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

             **s./ Martin J. Keane**
             _____
             Attorney

Janet T. Munn
Rasco Klock Reininger Perez Esquenazi Vigil & Nieto, P.L.
283 Catalonia Avenue - Suite 200
Coral Gables, Florida 33134
Telephone: (305) 476-7100
jmunn@rascoklock.com
***VIA CM-ECF***

James K. Stronski
Bruce D. DeRenzi
CROWELL & MORING LLP
590 Madison Avenue
New York, New York 10022
Telephone: (212) 223-4000
jstronski@crowell.com
bderenzi@crowell.com
***VIA CM-ECF***

Keith J. Harrison
Craig Lytle
Jennifer H. Burdman
Kristin Cooklin
CROWELL & MORING LLP
1001 Pennsylvania Avenue, N.W.
Washington, DC 20004
Telephone: (202) 624-2533
kharrison@crowell.com
clytle@crowell.com
jburdman@crowell.com
kcooklin@crowell.com
***VIA CM-ECF***

10904 – 001 / 267