☐ SEALED
☑ NOT SEALED

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 12-60862-CIV-MIDDLEBROOKS/BRANNON

SHIRE DEVELOPMENT LLC, *et al.*,

    Plaintiffs,

vs.

WATSON PHARMACEUTICALS, INC., *et al.*,

    Defendants.
_____/

## ORDER ON MOTIONS FOR SUMMARY JUDGMENT AND MOTION TO STRIKE

THIS CAUSE comes before the Court upon Plaintiffs'[1] Motion for Summary Judgment that the '720 Patent is not Invalid Under 35 U.S.C. § 112 (DE 118), filed December 21, 2012, and Defendants'[2] Motion for Summary Judgment of Non-Infringement (DE 122), filed under seal on December 26, 2012. The Court has reviewed the Motions, Responses, Replies, and the record in this case, and is otherwise fully advised in the premises.

**I.    Background**

On May 8, 2012, Plaintiffs filed the instant action against Defendants. The Amended Complaint, filed under the Hatch-Waxman Act, alleges Defendants' infringement of United States Patent No. 6,773,720 (the "'720 Patent"). The '720 Patent, which is assigned to Plaintiff Cosmo, is titled "Mesalazine Controlled Release Oral Pharmaceutical Compositions." (*See* DE 43 at ¶ 33).

---

[1] "Plaintiffs" refers to Shire Development LLC ("Shire Development"), Shire Pharmaceutical Development, Inc., Cosmo Technologies Limited ("Cosmo"), and Giuliani International Limited.

[2] "Defendants" refers to Watson Pharmaceuticals, Inc., Watson Laboratories, Inc. – Florida, Watson Pharma, Inc., and Watson Laboratories, Inc.

Plaintiff Shire Development is the owner of New Drug Application ("NDA") No. 22-000, which is FDA-approved[3] for the manufacture and sale of mesalamine-delayed release tablets commercialized under the name "*Lialda*." (*See id.* at ¶ 24).[4] The '720 Patent is listed in the FDA's publication "Approved Drug Products with Therapeutic Equivalence Evaluations" as covering *Lialda*. (*See id.* at ¶ 25).

When Plaintiffs were notified that Defendants had submitted to the FDA an Abbreviated NDA ("ANDA"), assigned number 203817, seeking approval of a generic version of *Lialda* before the expiration of the '720 Patent's exclusivity period, Plaintiffs filed suit. In short, Plaintiffs argue that Defendants' submission of the ANDA No. 203817 (the "ANDA product") infringes the '720 Patent. (*See id.* at ¶ 38).[5]

In responding to the Amended Complaint, Defendants filed two counterclaims against Plaintiffs. First, Defendants seek a declaration that their ANDA product would not infringe any claim of the '720 Patent. (*See* DE 52 at 15-16). Second, Defendants seek a declaration that the '720 Patent and its claims are invalid under 35 U.S.C. § 112, for lack of written description and lack of enablement, to the extent the claims are alleged to cover any products set forth in the ANDA No. 203817. (*See* DE 56 at 16-17).

---

[3]"FDA" is the United States Food and Drug Administration.

[4]According to the Amended Complaint, "Lialda[] is indicated for the induction of remission in adults with active, mild to moderate ulcerative colitis and for the maintenance of remission of ulcerative colitis." (*Id.* at ¶ 24).

[5]"[B]y deeming the filing of an ANDA to be an act of infringement under [35 U.S.C. § 271(e)(2)], the Hatch-Waxman Act allows a brand name drug manufacturer to challenge the ANDA application and a generic drug manufacturer to challenge the validity and infringement of an asserted patent before the patent expires." *Allergan, Inc. v. Alcon Labs., Inc.*, 324 F.3d 1322, 1326 (Fed. Cir. 2003).

On December 20, 2012, the Court held a *Markman* hearing on the issue of claim construction. The Court subsequently issued an Order (DE 147) construing the terms of Claim 1 of the '720 Patent.

On December 21, 2012, Plaintiffs filed their Motion for Summary Judgment (DE 118), arguing that the '720 Patent should be deemed not invalid under 35 U.S.C. § 112 as a matter of law. Defendants filed a Response (DE 135) to the Motion on January 14, 2013, to which Plaintiffs filed a Reply (DE 156) under seal on January 25, 2013.

On December 26, 2012, Defendants filed under seal their Motion (DE 122) seeking summary judgment of non-infringement "because there is no genuine issue of material fact but that Watson's ANDA product lacks one or more of the patent claim elements." (DE 122 at 20). Plaintiffs filed under seal their Response (DE 146) to the Motion on January 16, 2013, to which Defendants filed a Reply under seal on January 28, 2013.

## II.     Summary Judgment Standard

Summary judgment shall be rendered "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). In making its assessment of summary judgment, the Court "must view all the evidence and [reasonably draw] all factual inferences . . . from the evidence in the light most favorable to the nonmoving party." *Stewart v. Happy Herman's Cheshire Bridge, Inc.*, 117 F.3d 1278, 1285 (11th Cir. 1997). Additionally, the Court "must resolve all reasonable doubts about the facts in favor of the non-movant." *United of Omaha Life Ins. Co. v. Sun Life Ins. Co. of America*, 894 F.2d 1555, 1558 (11th Cir. 1990).

"By its very terms, this standard provides that the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986) (emphasis in original). "As to materiality, the substantive law will identify which facts are material. Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Id.* at 248. Likewise, a dispute about a material fact is a "genuine" issue "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

The moving party "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986). Summary judgment is proper "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Id.* at 322. In those cases, there is no genuine issue of material fact "since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Id.* at 323.

### III.    Invalidity

In their Second Counterclaim, Defendants allege that the '720 Patent is invalid under 35

U.S.C. § 112 for lack of written description and lack of enablement.[6] Plaintiffs move for summary judgment of non-invalidity under 35 U.S.C. § 112, arguing that Defendants' invalidity argument is improper and fails as a matter of law because the invalidity claim is conditioned upon infringement. As noted by Plaintiffs, "The present motion presents no issues of fact, but instead only a purely legal issue." (DE 118 at 6) (emphasis in original).

In response, Defendants argue that Plaintiffs' proposed claim constructions for the terms "matrix," "inner lipophilic matrix," and "outer hydrophilic matrix" – constructions that were subsequently adopted by the Court – would result in a claim scope that the '720 Patent "neither describes nor enables." (DE 135 at 2).[7] In essence, Defendants respond with largely factual arguments, as opposed to the legal arguments made by Plaintiffs in their Motion.[8]

Although Plaintiffs' Reply counters the factual contentions made by Defendants in their Response, the Court opts to limit the summary judgment analysis to the question presented in the

---

[6]35 U.S.C. § 112 provides, in relevant part:

> The specification shall contain a written description of the invention, and of the manner and process of making and using it, in such full, clear, concise, and exact terms as to enable any person skilled in the art to which it pertains, or with which it is most nearly connected, to make and use the same, and shall set forth the best mode contemplated by the inventor or joint inventor of carrying out the invention.

Id. § 112(a).

[7]Defendants also argue that the invalidity analysis is premature, as the Court had not yet construed the claims at the time of Defendants' briefing. However, because Defendants briefed the issue in the hypothetical – as if the Court construed the claims according to Plaintiffs' proposed construction, which the Court adopted – the Court sees no issue with considering invalidity at this juncture.

[8]Plaintiffs' Reply argues that the invalidity arguments made by Defendants in the Response should be stricken, as they were not previously disclosed to Plaintiffs and were only first raised in the Response. Since Defendants have not had an opportunity to respond to this request, nor did Plaintiffs file a separate motion, the Court will not address the issue at this time.

5

original Motion: Whether Defendants' invalidity counterclaim fails as a matter of law because it appears to be conditioned upon the accused product's infringement of the '720 Patent.

Although Plaintiffs have compiled ample case law explaining that patent infringement and invalidity are separate and distinct issues, they have failed to provide any support for the contention that Defendants' counterclaim fails as a matter of law.[9] As such, Plaintiffs have failed to meet their burden, and the Court must answer the question presented in the negative.

## IV.     Infringement

"Patent infringement, whether literal or by equivalence, is an issue of fact, which the patentee must prove by a preponderance of the evidence." *Siemens Med. Solutions USA, Inc. v. Saint-Gobain Ceramics & Plastics, Inc.*, 637 F.3d 1269, 1279 (Fed. Cir. 2011) (citing *Cross Med. Prods., Inc. v. Medtronic Sofamor Danek, Inc.*, 424 F.3d 1293, 1310 (Fed. Cir. 2005)). "Summary judgment on the issue of infringement is proper when no reasonable jury could find that every limitation recited in a properly construed claim either is or is not found in the accused device either literally or under the doctrine of equivalents." *U.S. Philips Corp. v. Iwasaki Elec. Co. Ltd.*, 505 F.3d 1371, 1374-75 (Fed. Cir. 2007) (citing *PC Connector Solutions LLC v. SmartDisk Corp.*, 406 F.3d 1359, 1364 (Fed. Cir. 2005)).[10]

In the Amended Complaint, Plaintiffs assert that Defendants' ANDA product will infringe

---

[9]Specifically, Plaintiffs have provided no case law, nor has the Court found any, holding that the mere assertion of invalidity conditioned upon infringement is improper to the extent that it would require a Court to make a finding of no invalidity as a matter of law.

[10]Because Defendants did not brief the issue of non-infringement based on the doctrine of equivalents, the Court will not discuss it at this stage. Further, after a cursory review of the doctrine, it appears that summary judgment of non-infringement would be precluded because there remain several genuine issues of material fact.

one or more Claims of the '720 Patent. (DE 43 at ¶ 45). Claim 1 of the '720 Patent is independent, whereas Claims 2-4 of the '720 Patent are dependent upon Claim 1. Because Claims 2-4 necessarily contain all of the limitations of Claim 1, Defendants' product can only infringe Claims 2-4 if it infringes Claim 1. Said differently, if Defendants' product does not infringe Claim 1, it cannot infringe any of Claims 2-4.[11] Thus, Defendants focus their arguments on Claim 1, which provides:

> 1. Controlled-release oral pharmaceutical compositions containing as an active ingredient 5-amino-salicylic acid,[11] comprising:
>
>    a. an inner lipophilic matrix consisting of substances selected from the group consisting of unsaturated and/or hydrogenated fatty acid, salts, esters or amides thereof, fatty acid mono-, di- or triglycerids, waxes, ceramides, and cholesterol derivatives with melting points below 90° C., and wherein the active ingredient is dispersed both in said the lipophilic matrix and in the hydrophilic matrix;
>
>    b. an outer hydrophilic matrix wherein the lipophilic matrix is dispersed, and said outer hydrophilic matrix consists of compounds selected from the group consisting of polymers or copolymers of acrylic or methacrylic acid, alkylvinyl polymers, hydroxyalkyl celluloses, carboxyalkyl celluloses, polysaccharides, dextrins, pectins, starches and derivatives, alginic acid, and natural or synthetic gums;
>
>    c. optionally other excipients;
>    wherein the active ingredient is present in an amount of 80 to 95% by weight of the total composition, and wherein the active ingredient is dispersed both in the lipophilic matrix and in the hydrophilic matrix.

DE 1-1 at 5.

Defendants move for summary judgment of non-infringement, arguing that their proposed generic version of *Lialda* does not infringe any of Claims 1-4 of the '720 Patent. Specifically,

---

[11] In Plaintiffs' Response to the Motion for Summary Judgment, Plaintiffs advise that they assert only Claims 1 and 3 of the '720 Patent, both of which contain only structural limitations.

[11] The active ingredient, 5-amino-salicylic acid, is also known as "mesalamine."

7

Defendants assert that the "undisputed material facts establish that [Defendants are] entitled to summary judgment of [non-]infringement for at least three reasons." (DE 122 at 4). First, Defendants argue that their product does not have an "inner lipophilic matrix" in which mesalamine is dispersed. Second, Defendants argue that their product does not have an "outer hydrophilic matrix" in which mesalamine is dispersed. Last, Defendants argue that their product does not contain a lipophilic substance with a melting point below 90°C.[12]

As noted above, Defendants' first argument is that their product does not infringe because it has no inner lipophilic matrix in which mesalamine is dispersed.[13] Specifically, Defendants argue that their product does not have a lipophilic matrix at all, as their product's "compressed core" contains one lipophilic substance – magnesium stearate – and only as a lubricant in the subsequent tablet-compression step.[14] Thus, Defendants say, their ANDA product does not have a lipophilic matrix containing mesalamine dispersed therein. Additionally, Defendants assert that the only mesalamine-containing granules in the ANDA product do not contain any lipophilic substances.

---

[12]Defendants' Motion also argues that summary judgment should be granted because the process used to create the accused product is different than the process described in the '720 Patent. However, this argument is irrelevant, as the '720 Patent's claims involve purely structural limitations, and the Court looks only to the alleged infringing product, not the process by which the product was made. *See Kibbe Testimony* at 118:17 to 119:9 ("Q: Is there anything in Claim 1 that describes any type of manufacturing process? A: No. It describes the structure. But the structure is the direct result of how you make it."); *see also Exxon Chem. Patents, Inc. v. Lubrizol Corp.*, 64 F.3d 1553, 1557 (Fed. Cir. 1995).

[13]The Court previously construed "matrix" to mean "a macroscopically homogeneous structure in all its volume" and "inner lipophilic matrix" to mean "a matrix including at least one lipophilic excipient, where the matrix is located within one or more other substances." (DE 147 at 7, 9). Also, the Court previously construed "dispersed" to mean "sufficiently mixed to incorporate one substance with another."

[14]Plaintiffs contend that the magnesium stearate used in the Watson ANDA product contains at least two substances – magnesium stearate and magnesium palmitate, both of which are lipophilic substances and "salts of hydrogenated fatty acids." (*See* DE 142 at ¶¶ 11-13).

(*See* DE 122 at 17).

To counter this assertion, Plaintiffs present evidence from Dr. David Bugay indicating that magnesium stearate is found throughout the interior of each of the ANDA product's mesalamine granules. (*See* Bugay Decl. at ¶ 6) ("The SEM-EDX and Raman results show that the magnesium stearate in the Watson ANDA product is dispersed homogeneously within the mesalamine granules."). Given Plaintiffs' expert testimony and testing done of the ANDA product, there remains a genuine issue of material fact that cannot be resolved at summary judgment.

Defendants also argue that "[b]ecause there is no inner lipophilic matrix, there necessarily is no 'outer [hydrophilic] matrix' in the Watson ANDA product" as required by Claim 1 of the '720 Patent. (DE 122 at 19).[14] However, given the Court's finding that Plaintiffs have provided sufficient evidence to create a genuine issue of material fact as to whether there is an inner lipophilic matrix in the ANDA product, this argument must fail as well.

Defendants next argue that they cannot infringe because mesalamine is only contained in Defendants' mesalamine granules and is not separately dispersed within the "extragranular" sodium starch glycolate ("SSG").[15] While it is admitted by Defendants that there is a hydrophilic substance (SSG) "outside" of the mesalamine granules (which Plaintiffs assert contain the inner lipophilic matrices), Defendants dispute the notion that SSG forms an outer hydrophilic matrix, let alone contains mesalamine dispersed within.

Plaintiffs introduce evidence supporting the following arguments that counter Defendants'

---

[14]The Court previously construed "outer hydrophilic matrix" to mean "a matrix of at least one hydrophilic excipient, where the matrix is located outside the inner lipophilic matrix." (DE 147 at 9).

[15]It appears undisputed that SSG is a hydrophilic substance and that the ANDA product contains SSG. (*See* DE 122 at 9; DE 146 at 8).

9

contention that mesalamine is not dispersed within the "extragranular" hydrophilic substance (SSG). First, Plaintiffs claim SSG is present at the surface of the granules (where SSG is agglomerated) and is in contact with and dispersed with the mesalamine in that region. Second, outside of the granules there are "fines"[16] that exist throughout the ANDA product. Plaintiffs provide evidence indicating that these fines contain mesalamine, and, more generally, that mesalamine is present both inside and outside the granules. Third, Plaintiffs claim the SSG material will swell massively upon ingestion of the tablet and infusion of liquid into the tablet, "thus expanding throughout the outer space surrounding the mesalamine-containing granules and the mesalamine-containing fines." (DE 146 at 9). As a result of this expansion, "the outer SSG hydrophilic matrix with be homogeneously dispersed with mesalamine as it continues to transit and release in the gastrointestinal tract." (*Id.*).

With respect to whether mesalamine is dispersed with the SSG matrices outside of the mesalamine granules, I find that there remains a genuine issue of material fact, as Plaintiffs have provided adequate evidence indicating that a hydrophilic matrix is present in the ANDA product and mesalamine is dispersed within it. Even if doubt remains as to whether mesalamine is dispersed – or sufficiently mixed to incorporate one substance with another – with the SSG, all reasonable doubts as to facts must be resolved in favor of the nonmovant. Thus, summary judgment is precluded.

Last, Defendants argue that the ANDA product does not infringe as a matter of law because the magnesium stearate used in its product has a melting point well above 90°C. Specifically, Defendants provide evidence that their magnesium stearate supplier, Mallinckrodt, provides a

---

[16]Plaintiffs claim that "fines" are tiny particles and powders that have broken off during the creation of the mesalamine granules. Defendants, however, contend that fines "are still granules." (*See* DE 122 at 10); Joshi Depo. at 241:17-242:21.

product with a melting point between 150°C and 170°C. If this is true, the ANDA product would not infringe because Claim 1 requires the substance or substances creating the lipophilic matrix to have a melting point below 90°C.

However, summary judgment of non-infringement on this issue is not appropriate, as Plaintiffs offer evidence disputing whether Mallinckrodt is the magnesium stearate supplier for the ANDA product. (*See* DE 148-28). Plaintiffs assert, and provide supporting evidence, that Covidien is the actual supplier of the magnesium stearate for the ANDA product, and the magnesium stearate supplied by Covidien has a melting point below 90°C. (*See* DE 142 at ¶ 28). Additionally, Plaintiffs' dispute several of Defendants' references that supposedly report a melting point of magnesium stearate "well above" 90°C. Thus, a genuine issue of material fact remains with regard to the melting point of the magnesium stearate in the ANDA product.[17]

## V. Motion to Strike

After Plaintiffs served their Response and attached exhibits in opposition to Defendants' Motion for Summary Judgment, Defendants filed a Motion to Strike (DE 160) on January 28, 2013. In their Motion, Defendants move to strike the declaration of Joseph Paller and several portions of other Plaintiffs' experts' declarations on the basis of untimeliness pursuant to Federal Rule of Civil Procedure 37. Specifically, Defendants seek to strike the following:

1. The entire declaration of expert witness Joseph Paller because he was not timely disclosed as an expert witness;

---

[17] Because Defendants' Motion for Summary Judgment is due to be denied, the Court will not address the Rule 56(d) motion buried within Plaintiffs' Response, which asks the Court to deny the Motion for Summary Judgment, or defer consideration of that Motion "until Watson rectifies [certain] discovery deficiencies." (DE 146 at 19).

11

2. Paragraph 10 of expert witness Steven Little's declaration in support of Plaintiffs' opposition to Defendants' Motion for Summary Judgment because Dr. Little's opinions in Paragraph 10 were not timely disclosed;

3. Paragraph 9 of expert witness David Bugay's declaration in support of Plaintiffs' opposition to Defendants' Motion for Summary Judgment because paragraph 9 of Dr. Bugay's declaration untimely discloses new opinions not included in Dr. Bugay's original expert report; and

4. Paragraphs 25 and 27 of Patrick Sinko's declaration in support of Plaintiffs' opposition to Defendants' Motion for Summary Judgment because paragraphs 25 and 27 of Dr. Sinko's declaration untimely offers new "opinion" not included in Dr. Sinko's original expert report.

I have reviewed the Motion, Plaintiffs' Response (DE 167), and the Reply brief (DE 167), and I am otherwise fully advised in the premises.

Rule 37(c)(1) provides:

If a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless. In addition to or instead of this sanction, the court, on motion and after giving an opportunity to be heard:

    (A) may order payment of the reasonable expenses, including attorney's fees, caused by the failure;

    (B) may inform the jury of the party's failure; and

    (C) may impose other appropriate sanctions, including any of the orders listed in Rule 37(b)(2)(A)(i)-(vi).

Fed. R. Civ. P. 37(c)(1). Rule 26 requires parties to disclose expert opinion reports in the time frame

stipulated by the parties or otherwise ordered by the court. Fed. R. Civ. P. 26(a)(2)(D). These reports must include "a complete statement of all opinions the witness will express and the basis and reasons for them." Fed. R. Civ. P. 26(a)(2)(B)(i).

"The burden of establishing that a failure to disclose was substantially justified or harmless rests on the nondisclosing party." *Mitchell v. Ford Motor Co.*, 318 F. App'x 821, 824 (11th Cir. 2009) (citing *Leathers v. Pfizer, Inc.*, 233 F.R.D. 687, 697 (N.D.Ga.2006)). In determining whether a failure to sufficiently disclose an expert witness is substantially justified or harmless, courts should consider (1) the importance of the testimony, (2) the reasons for the failure to disclose the witness earlier, and (3) the prejudice to the opposing party if the witness is allowed to testify. *Cooley v. Great S. Wood Preserving*, 138 F. App'x 149, 161 (11th Cir. 2005) (quoting *Bearint v. Dorell Juvenile Grp., Inc.*, 389 F.3d 1339, 1353 (11th Cir. 2004)).

A.  *Dr. Paller's Declaration*

Dr. Paller's declaration (DE 143-1) provides Dr. Paller's opinions regarding whether stearic acid is formed from the interaction between magnesium stearate and simulated intestinal fluid ("SIF"), or acetic acid. (*See* DE 143-1 at ¶ 12) ("In conclusion, treatment of Magnesium Stearate with either modified SIF or Acetic Acid leads to the formation of a band at 1700cm$^{-1}$, which is possibly Stearic Acid."). He arrived at his opinions after conducting laboratory testing. Defendants only learned of Dr. Paller when Plaintiffs provided his declaration in support of their opposition to Defendants' Motion for Summary Judgment, as he was not otherwise disclosed as an expert witness.

With regard to this new opinion, Plaintiffs argue that Dr. Paller's findings are "neither controversial nor prejudicial" to Defendants. Plaintiffs also claim that any potential prejudice would be cured by allowing Defendants to depose Dr. Paller. However, Plaintiffs fail to provide a reason

why Dr. Paller was not previously disclosed as an expert witness as required by the Federal Rules of Civil Procedure, the Court's scheduling orders, and the Parties' stipulations.

After considering the factors listed above and arguments by both Parties, I find that Plaintiffs have not met their burden to demonstrate that the late disclosure of Dr. Paller was substantially justified or harmless. Thus, Rule 37 requires the Court to exclude Dr. Paller as an expert witness for Plaintiffs and strike his declaration in its entirety.

### B.    *Declarations of Drs. Little, Bugay, and Sinko*

With regard to portions of the remaining declarations filed in support of Plaintiffs' opposition to Defendants' Motion for Summary Judgment, I find that allowing such is harmless and does not prejudice Defendants. Specifically, I find that the opinions in the relevant portions of the declarations were already substantially covered by the respective experts. Further, allowing the disputed declarations will not prejudice Defendants, as the same or similar topics were covered by other experts, and Defendants have had several opportunities to question the experts on these topics and rebut any opinions with their own experts. Additionally, these disputed areas are central to the Plaintiffs' case, and excluding such on the eve of trial may result in prejudice to Plaintiffs.

## VI.    Conclusion

For the foregoing reasons, both Motions for Summary Judgment are due to be denied. Also, Defendants' Motion to Strike is granted in part and denied in part, with only Dr. Paller's declaration to be stricken and his testimony excluded.

Accordingly, it is hereby

**ORDERED AND ADJUDGED** as follows:

1.    Plaintiffs' Motion for Summary Judgment (DE 118) is **DENIED**;

2. Defendants' Motion for Summary Judgment of Non-Infringement (DE 122) is **DENIED**; and

3. Defendants' Motion to Strike (DE 160) is **GRANTED IN PART AND DENIED IN PART**. The Motion is **GRANTED** with respect to the declaration of Dr. Joseph Paller, which is **STRICKEN** from the record. Plaintiffs are precluded from using Dr. Paller as an expert witness in this case.

Further, it is hereby

**ORDERED AND ADJUDGED** as follows:

1. Defendants' Motion for Leave to File Under Seal Certain Specified Filings in Relation to Defendants' Motion for Summary Judgment (DE 121) is **GRANTED**. The Clerk of Court shall **FILE UNDER SEAL** the following:

    a. Defendants' Motion for Summary Judgment (DE 122);

    b. Defendants' Statement of Undisputed Material Facts (DE 123);

    c. The Declaration of Dr. Arthur Kibbe (DE 124) and Exhibit Nos. 2 and 3 attached thereto; and

    d. Exhibit Nos. 7, 8, 9, and 12 to the Declaration of Mark Jansen, Esq. (DE 125).

2. Plaintiffs' Motion to Seal (DE 141) is **GRANTED**.[18] The Clerk of Court shall **FILE UNDER SEAL** the following documents filed in support of Plaintiffs' opposition

---

[18] As previously stated, the mere fact that there is a stipulated protective order between the parties and that this case involves "trade secrets" does not entitle parties to have documents filed under seal. This Motion does not comply with my previous Order requiring specific good cause to be set forth in order for a document to be filed under seal. Nevertheless, I will grant the instant Motion, but Plaintiffs must file redacted versions of documents covered by this Motion **within seven (7) days of this Order.**

to Defendants' Motion for Summary Judgment:

    a.    Plaintiffs' Response to Defendants' Statement of Undisputed Material Facts (DE 142);

    b.    The Declarations (DE 143), and the exhibits attached thereto; and

    c.    Plaintiffs' Opposition to Defendants' Motion for Summary Judgment (DE 146).

3.    Plaintiffs' Motion to Seal (DE 144) is **GRANTED**.[19] The Clerk of Court shall **FILE UNDER SEAL** the Declaration of Jason A. Lief (DE 145) and the exhibits attached thereto;

4.    Plaintiffs' Motion to Seal (DE 154) is **GRANTED**.[20] The Clerk of Court shall **FILE UNDER SEAL** the following documents:

    a.    Plaintiffs' Reply in Support of their Motion for Summary Judgment (DE 156); and

    b.    Exhibits 2, 5, 6, and 7 of the Declaration of Andrew Wasson (DE 156). The remaining Exhibits 1, 3, and 4 shall be **UNSEALED,** as they were sealed erroneously.

5.    Defendants' Unopposed Motion for Leave to File Under Seal Defendants' Motion to Strike and Reply Memorandum (DE 159) is **GRANTED**. The Clerk of Court

---

[19] Plaintiffs must file in the public docket redacted versions of the documents sought to be sealed **within seven (7) days of this Order**.

[20] Similar to Plaintiffs' previous Motions, this Motion is deficient. Plaintiffs must file in the public docket redacted versions of the documents sought to be sealed **within seven (7) days of this Order**.

shall **FILE UNDER SEAL** the following documents:

    a.    Defendants' Motion to Strike (DE 160) and the exhibits attached thereto; and

    b.    Defendants' Reply Brief in Support of Motion for Summary Judgment (DE 161) and the exhibits attached thereto.

6.    Plaintiffs' Motion to Seal (DE 164) is **GRANTED**.[21] The Clerk of Court shall **FILE UNDER SEAL** Plaintiffs' Reply Brief in Support of Shire's Rule 56(d) Motion (DE 165);

7.    Plaintiffs' Motion to Seal (DE 166) is **GRANTED**.[22] The Clerk of Court shall **FILE UNDER SEAL** Plaintiffs' Opposition to Defendants' Motion to Strike (DE 167) and the Declaration of Nicholas F. Giove in Support of Plaintiffs' Opposition to Defendants' Motion to Strike (DE 168), along with the exhibits attached thereto.

**DONE AND ORDERED** in Chambers at West Palm Beach, Florida, this 26 day of March, 2013.

DONALD M. MIDDLEBROOKS
UNITED STATES DISTRICT JUDGE

Copies to:    Counsel of Record

---

[21] Again, Plaintiffs' Motion is deficient. In order for this document to remain under seal, Plaintiffs must file in the public docket a redacted version of the document sought to be sealed **within seven (7) days of this Order**.

[22] Again, Plaintiffs' Motion is deficient. In order for these documents to remain under seal, Plaintiffs must file in the public docket redacted versions of the documents sought to be sealed **within seven (7) days of this Order**.